[Crim. No. 453.   In Bank.—August 13, 1900.]

THE PEOPLE, Respondent, v. ALBERT FREDERICK GEORGE VERENESENECKOCKOCKHOFF, Appellant.

CRIMINAL LAW—HOMICIDE—PROPER INSTRUCTIONS AS TO MOTIVE.—Upon the trial of a defendant accused of murder, it is proper to instruct the jury that motive is not the ultimate fact to be proved; and that, if the crime is sufficiently proved, it does not matter whether there is a motive or not; but that, in a case depending upon circumstantial evidence, the presence or absence of motive is matter of corroboration, and makes other evidence more or less persuasive, and diminishes or increases the presumption of innocence.

ID.—IMPROPER INSTRUCTIONS AS TO MOTIVE—PROBATIVE FORCE OF EVIDENCE—CHARGE UPON MATTER OF FACT.—An instruction requested by the defendant that "it is against all experience and reason to suppose that a man will imperil his own life and inflict upon another a brutal crime without a motive, and in the mere wantonness of depravity," involves no rule of law, but is only as to the probative force of evidence, and is properly refused. A charge given by the court that "it may be impossible to show or establish a motive, for the reason that we cannot fathom the

CXXIX. CAL.—32

mind of the accused on trial, and ascertain if there is not a hidden desire of vengeance or some passion to be gratified," is an argument against the defendant on the facts, and is an improper charge as to a matter of fact.

ID.—CONSTRUCTION OF CONSTITUTION—PROVINCE OF COURT AND JURY.—Section 19 of article III of the constitution, providing that "judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law," refers to the province of the jury to determine all matters of fact, and of the court to determine the law, and forbids either the judge or the jury to trespass upon the province of the other. The court must not charge or advise with respect to matters of fact, and its power to state the testimony is exclusive of any other power of the court in its charge in respect to the evidence; and the prohibition upon it is coextensive with the exclusive province of the jury.

ID.—RELATIVE FORCE OF DIRECT AND CIRCUMSTANTIAL EVIDENCE — INSTRUCTION AS TO MATTER OF FACT.—The law declares nothing as to the relative probative force of direct and circumstantial evidence; and it is wholly matter for the jury to determine, according to their convictions, from the evidence. An instruction to the jury that circumstantial evidence is not entitled to a less degree of credit than direct evidence, and that circumstances are not likely to be fabricated, is an instruction as to matter of fact within the prohibition of the constitution. [McFarland, J., Garoutte, J., and Van Dyke, J., dissenting.]

ID.—CASES OVERRULED.—*People v. Cronin,* 34 Cal. 191, and cases affirming the doctrine of that case as to the relative weight of direct and circumstantial evidence, overruled. [McFarland, J., Garoutte, J., and Van Dyke, J., dissenting.]

ID.—INAPPLICABLE DECISIONS AS TO WEIGHT OF CIRCUMSTANTIAL EVIDENCE.—The decisions made by the courts of other states in relation to the relative weight of direct and circumstantial evidence, where the trial judges were free from any constitutional or statutory restrictions upon their power to sum up the evidence, are inapplicable under our constitution.

ID.—EFFECT OF PRIOR DECISIONS — CONSTRUCTION OF CONSTITUTION — POWER OF JUDGES TO CRITICISE EVIDENCE.—Though it is conceded to be a proper rule of construction that the words of our constitution are to be construed in the same sense that had been previously fastened upon similar language by the decisions of other states, yet there are no authoritative decisions of other states which have fastened upon the language of our constitution the construction that judges may, in their charges to juries, criticise the weight and credibility of evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Carroll Cook, Judge.

The facts are stated in the opinion of the court, per Temple, J., upon the first hearing in Bank.

.W. H. Schooler, and R. L. Simpson, for Appellant.

F. W. Sawyer, *Amicus Curiae*, also for Appellant.

W. F. Fitzgerald, former Attorney General, W. H. An-derson, former Assistant Attorney General, Tirey L. Ford, Attorney General, C. N. Post, Assistant Attorney General, A. A. Moore, Deputy Attorney General, D. J. Murphy, District Attorney of San Francisco, and Henry A. Melvin, Assistant District Attorney of Alameda County, for Respondent.

BEATTY, C. J.—When this cause was originally submitted for decision the only answer to the objections of appellant to the charge of the trial judge was a reference to Durrant's case. ·(*People v. Durrant,* 116 Cal. 222.) In the opinion of Justice Temple it was shown that Durrant's case was not authority on the point here involved. In his petition for a rehearing the attorney general then cited as authority against the conclusions ·of the court the charge of Chief Justice Shaw in the Webster case, and various decisions of the courts of New York and other states, sustaining similar charges. Before the oral argument on rehearing the attention of counsel was called to the fact that in all those cases the trial judges were entirely free from any constitutional or statutory restriction upon their power to sum up the evidence, and, consequently, that the opinions and practices of Chief Justice Shaw, Chief Justice Gibson, and other American judges in such cases, is no more authority in cases arising under the constitution of California than would be a charge approved or delivered by Lord Hale.

In response to this suggestion counsel for the people cited at the oral argument a number of decisions by the courts of our sister states, which they contend have given to constitutional provisions similar to our own a stricter and narrower construction than that upon which Justice Temple's opinion was based.

And it is contended that some of these cases having been decided before the adoption of our first constitution in 1849, and others before the adoption in 1879 of our present constitu-

tion, we are bound by a familiar rule of construction to hold that the words of our constitution were adopted in the sense which had been attributed to them in those decisions. I admit the validity of this rule of construction, but on examination of the decisions referred to find no grounds for its application in this case. The supreme court of Tennessee, at its July term, 1843, decided the case of *Ivey v. Hodges*, 4 Humph. 154. That was a civil case, and the only question to be decided was whether the trial court had erred in refusing to restate the evidence to the jury at the conclusion of the trial. In considering this question the writer of the opinion quoted the provision of their constitution that: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law," and thereupon proceeded to observe that: "This provision arose out of the jealousy with which our ancestors always looked upon any attempt on the part of the courts to interfere with the peculiar province of the jury, the right to determine what facts are found in a cause, and to put a stop to the practice of summing up as it was and is yet practiced in the courts of Great Britain, and in all probability in the colonies before the Revolution, and which consists in telling the jury not what was deposed to, but what was proved. This the framers of our constitution considered a dangerous infraction of the trial by jury, and have prohibited it in express terms: Judges shall not charge with respect to matters of fact—that is, shall not state to the jury what facts are proved." This is the case upon which most reliance is placed by counsel for the people, and they contend that it settled the construction of the Tennessee constitution to the effect that judges are merely prohibited from stating to the jury what facts are proved, leaving them entirely free to comment upon and criticise the evidence, its weight and credibility. It will be seen, however, that this is not even a necessary implication from what was remarked *obiter* in respect to a matter only incidentally related to the question to be decided. The court was not called upon to decide, and the case before them did not admit of a decision, as to the full scope of the clause prohibiting a charge as to matters of fact. They merely remarked in passing that it prohibited a charge as to the facts proven—a statement which was,

and was no doubt designed to be, quite within the truth, and by no means exclusive.   We shall see when we come to examine the decisions of this court that it has been expressly held here in some cases, and implied in many more, that the corresponding clause of our constitution means a great deal more than to prohibit a statement of what has been proved.

Another Tennessee case is *Ayres v. Moulton,* 5 Cold. 154, in which a judgment was reversed because the trial judge told the jury that "from the facts as proven" the plaintiff was entitled to recover.   Of course, this decision was correct, but it does not follow that the judgment would not equally have been reversed if the trial judge had merely told the jury that the evidence for plaintiff was entitled to great weight because of a character not likely to be fabricated.

These two are the only cases called to our attention which were decided before the adoption of the constitution of 1849, and manifestly they did not so construe the clause in the Tennessee constitution as to compel us to hold that in copying it the people of California only meant that judges should abstain from telling juries what facts had been proved.   In Arkansas the case of *Harris v. State,* 34 Ark. 469, was decided in 1879.   In that case the court was ruling upon an exception by the defendant to the giving of any charge by the court after the close of the argument.   This was the only point to be decided, and the court in passing upon it, after quoting a provision of their constitution similar to our own, proceeded to observe: "Judges may not now, as under the former practice, in charging juries, sum up the evidence and tell them what facts are proven and what are not, and leave them to find such facts only as the court may deem disputed or doubtful, but it is the province of the court to declare the law applicable to the case, and the court is not obliged to be silent after the close of the argument."   Here the decision of the court is completely covered by the last clause of the quotation.   What precedes is dictum—as in the Tennessee case—true, as far as it goes, but by no means the whole truth.

In South Carolina a similar constitutional provision has been construed and applied in cases too numerous to be reviewed in detail here.   The very number of these cases—about sixty—

suggests a conclusion which is verified by a close examination,. viz., that they are not entirely harmonious, and that the earlier decisions have not been accepted as a satisfactory solution of the question.

The only decision of the South Carolina court antedating the adoption of our present constitution was in *Redding v. Railroad Co.*, 5 S. C. 67, decided in 1873. The exception considered in that case was to a charge of the trial judge "that there was no testimony to support the first cause of action." It was held that if there was no such evidence the ruling was one involving strictly a matter of law, and the court declined to look into the evidence to see whether there was any testimony to support the first cause of action, because that supposed cause of action was insufficient. to support a verdict. This simple proposition was all that was decided, but the court made the general remark—wholly outside of the matter to be decided, and wholly foreign to the reasons by which their judgment is supported—that the sole intention of the constitutional provision was to prevent judges from forcing, or to employ their influence to force, upon juries their own convictions as it regards matters of fact. Here, again, all that was said upon the point under discussion was purely *obiter*, but, even so, it goes far enough to condemn the use by the trial judge of any argument on the evidence, or any comment upon its weight or credibility.

In a subsequent case (*State v. Addy*, 28 S. C. 4, decided in 1887) the South Carolina court, upon a review of a number of its previous decisions and of the decisions of other courts, announced this construction of the clause in question: "That the judge must carefully avoid expressing an opinion on the facts, leaving it to the jury to draw their own conclusions entirely unbiased by any impression which the testimony may make upon the mind of the judge. He must not in any way indicate his opinion of the facts to the jury." Upon this principle they reversed the judgment of the trial court, because the judge had commented upon the credibility of the defendant's testimony,. or, in other words, had made an argument on the evidence. This concedes the whole of Justice Temple's position, and shows how far short of the true meaning of the constitutional

prohibition are the *dicta* in the Tennessee, Arkansas, and early South Carolina cases.

In the very latest South Carolina case to which our attention has been called (*Norris v. Clinkscales,* 47 S. C. 511, 513) there is an elaborate review of their previous decisions upon this point, from which the conclusion is deduced that: "A judge violates this provision when he expresses in his charge his own opinion upon the force and effect of the testimony, or any part of it, or intimates his views of the sufficiency or insufficiency of the evidence in whole or in part." Accepting this as authority, the instructions in this case are obnoxious to the principle stated. When a judge tells a jury that although there is no evidence of a motive on the part of the defendant for the commission of the offense charged, there may nevertheless have been a motive undisclosed, and that circumstantial evidence (the evidence relied upon to convict) has the advantage of direct evidence because it is not likely to be fabricated, he certainly expresses an opinion upon the force and effect of the testimony and intimates his view of its sufficiency. It is scarcely necessary to extend this review of cases decided in other jurisdictions, since we may find in our own decisions the most explicit statements of the true construction of the clause in question.

In *Kauffman v. Maier,* 94 Cal. 283, the trial court had instructed the jury that parol proof of verbal admissions should be received with great caution, etc. This was held to be an invasion of the province of the jury, and none the less so because it is a matter of common knowledge that the statements of witnesses as to verbal admissions are very apt to be erroneous, and notwithstanding the consensus of writers on the law of evidence to that effect. The opinion of Justice Harrison, at page 283, points out very clearly and forcibly why this is so, and every word there said applies with equal force to what was said in this case in regard to the advantages of circumstantial evidence.

In the case of *People v. Fong Ching,* 78 Cal. 169, 173, Justice McFarland uses this language: "But the moment he [the judge] attempts to comment upon or argue about the weight of evidence, the credibility of witnesses, or the probability of their sworn statements, he usurps power and violates section 19 of article VI of the state constitution, which provides that judges

shall not charge juries with respect to matters of fact. 'To weigh the evidence and find the facts is in this state the exclusive province of the jury, and with the performance of that duty the judge cannot interfere without a palpable violation of the organic law.' (*People v. Dick,* 34 Cal. 666.)"

It is not necessary to multiply citations upon this point, or to refer to the numerous cases in which the same doctrine has been assumed without express statement. It may, however, be proper to refer again to Cronin's case. (*People v. Cronin,* 34 Cal. 191.) In Justice Temple's opinion he has pointed out the apparent oversight of Judge Sanderson in founding his conclusions upon the practice of the United States courts, and ignoring the special provision of our constitution. I have only to add that the decision in Cronin's case, while it remains unquestioned authority upon the point mainly considered, viz., the sufficiency of the indictment, has been very seriously questioned and vigorously criticised on every other point. (See 2 Notes on California Reports, 748.) As to one of the instructions it was in effect overruled in *People v. Padillia,* 42 Cal. 540, and as to another, the comment upon the defendant's position as a witness, it has been reluctantly followed in this state with continual protest; while in the state of Nevada, after being followed for a time, it was finally repudiated. In this connection I take occasion to notice the claim of counsel that in delivering the opinion of the court in *State v. Nelson,* 11 Nev. 334, and in concurring in the opinion of Chief Justice Hawley, in *State v. Rover,* 13 Nev. 24, I approved the opinion of Judge Sanderson in the Cronin case. It is true I sustained two instructions copied from that case, but those instructions were very different from the instructions under review. The jury was not there told that circumstantial evidence is not likely to be fabricated. If such an instruction had been under review I should have had for my guidance the very able opinion of Justice Garber, in *State v. Van Winkle,* 6 Nev. 340, in which an instruction infected with the same vice was elaborately considered and condemned as an infraction of the constitution.

With these observations upon the points urged upon the rehearing it is sufficient to say that upon mature consideration of the whole case we adhere to the conclusions announced in the

opinion of Justice Temple, and for the reasons there stated the judgment is reversed and the cause remanded for a new trial.

Harrison, J., Henshaw, J., and Temple, J., concurred.

McFarland, J., dissented.

GAROUTTE, J., dissenting.—I dissent.   This cause is now returned to the superior court for a second trial upon the ground that the jury was wrongly instructed as to the law of circumstantial evidence.   The instruction given to the jury upon this branch of the law was too long—too analytical.   In a text-book treating of criminal law, and written for the edification of lawyers and judges, such a discussion would be most appropriate; but its material assistance to a jury as a lamp to guide their feet is most doubtful.   It may be safely said that the ordinary juryman listening to a charge of the court fails to grasp a long technical analysis of the principles upon which the law of circumstantial evidence is based.   And, in view of the fact that jurors are not lawyers but men brought from other walks of life, a plain declaration of fundamental elementary principles bearing upon the various branches of the law involved in the case is far more satisfactory, for every legitimate reason, than an extended dissertation upon criminal law, however legally sound that dissertation may be.

Notwithstanding the foregoing suggestions, I see nothing in the instruction upon circumstantial evidence that justifies an order of this court calling for a second trial of the defendant. The parts of the instruction quoted in the majority opinion in substance have been given to juries in criminal cases in the past, and upon appeal to this court have stood the test when tried in the crucible of the law.   (*People v. Cronin*, 34 Cal. 191; *People v. Morrow*, 60 Cal. 142; *People v. Urquidas*, 96 Cal. 241; *People v. Durrant*, 116 Cal. 179.)   Those cases have declared the criminal law of this state too long to be now overthrown and cast aside without the gravest reasons.   I think those reasons are totally lacking.

It is not a fair test of the legal soundness of an instruction to measure it by an isolated sentence taken therefrom.   It should be taken as a whole, and as a whole its validity measured.

Throughout this instruction the court is dealing with circumstantial evidence in general. It is said that in a proper case circumstantial evidence has all the force, dignity, and effect possessed by direct and positive evidence. This is true. It is good law. Under the decisions in this state it is axiomatic. The court was not referring to the particular circumstantial evidence in the case on trial. It was not referring to the defendant. It was dealing with the question in the abstract and declaring general principles, leaving it for the jury to test and weigh and measure the case before it by those principles. The law declares that circumstantial evidence, if it satisfies the minds of the jurors of defendant's guilt beyond a reasonable doubt, demands a verdict of guilty exactly the same as direct and positive evidence. I see no possible legal objection to the court so declaring to the jury. The reason why circumstantial evidence is recognized and admitted in courts of justice in criminal trials, is a matter not material for a juror to know in making up his verdict. The fact that it is his duty to act upon such evidence is sufficient. At the same time there is no substantial error in telling the jurors why that class of evidence is recognized and admitted in courts of justice. There certainly is no violation of the constitutional provision forbidding judges to charge jurors as to matters of fact found in such a charge. Neither can it be said that this character of declaration is argumentative against defendant's innocence. I believe the conclusion declared by the majority of the court is based upon reasoning too technical, too metaphysical. The law does not contemplate that the practical administration of justice should be defeated upon these grounds.

VAN DYKE, J.—I dissent, and concur in the main with what is said in the dissenting opinion of Mr. Justice Garoutte.

The following is the opinion of the court in Bank rendered by Mr. Justice Temple, upon the former hearing in Bank, August 1, 1899, approved in the foregoing opinion of the court upon rehearing:

TEMPLE, J.—The defendant was convicted of murder in the first degree, and judgment of death was pronounced upon

him.   He appeals from the judgment without a bill of exceptions.   The rulings complained of all relate to giving or refusing to give instructions.

The defendant asked the court to instruct the jury as to the probative force, to be found in the fact that, as was claimed, there was no apparent motive for the commission of the offense. The court was asked to say that: "It is against all experience and reason to suppose that a man will imperil his own life, and inflict upon another a brutal crime, without a motive and in the mere wantonness of depravity," and, further, when the question is as to whether defendant committed the crime, it is of great importance.   The instruction was properly refused.   It involved no rule of law, but only a question as to the probative force of certain evidence.

Instruction 3, asked by the defendant, was properly refused, for the reason given.   It was unintelligible.   I think counsel meant to ask an instruction to the effect that, if the circumstances were consistent with some theory under which defendant could be innocent, such theory should be preferred to an hypothesis equally consistent with the circumstances proven, but by which guilt would be established.   But it is added, "unless the hypothesis of which the construction of guilt is based upon is proven beyond all reasonable doubt."   Waiving the imperfect expression, I do not understand this in connection with what precedes it, and that leads me to doubt whether I have understood any part of it.   I think it may be assumed that the jury could not have received enlightenment from it.

But while the court correctly declined to charge the jury at the request of the defendant as to the value and effect of the evidence, it proceeded to do the same thing of its own motion.

The attorney general suggests that the instruction cannot be reviewed, because the evidence has not been brought up and we cannot know that it could have been injurious.   But even in the absence of a bill of exceptions we may presume that there was evidence of some character to which the instruction would apply; and where the giving of such instruction would be erroneous, as applied to all possible evidence to which it would be applicable, then error has been made out.

Here the court tells the jury that there are two main facts to be made out by the prosecution: 1. That a crime has been committed; and 2. That the defendant committed it, and then proceeds to discuss the importance of the proof of motive. It is recognized that motive is not the ultimate fact to be proven, but the proof or disproof of any motive or inducement to commit the crime is merely evidentiary in its character, but is an important consideration, especially in a case depending upon circumstantial evidence.

The only matter of law in all this is that the motive is not the ultimate fact to be proven, and, of course, it would follow from this that if the commission of the crime by the defendant be sufficiently proven it does not matter whether there appears to have been a motive or not. This is certainly true in this class of cases. The presence or absence of motive is matter of corroboration—or, rather, it makes other evidence more or less persuasive. It increases or diminishes the presumption of innocence, and in this case it could have had no other function. And this is recognized in the charge, which nevertheless proceeds to tell the jury how difficult it is to prove motive, and states that: "It may be in many cases impossible to show or establish a motive, for the reason that we cannot fathom the mind of the accused on trial and ascertain if there is not a hidden desire of vengeance or some passion to be gratified; besides, there is no rule of law which determines what is or what is not an adequate motive, even if it were necessary to show one."

Applying this to the case, the jury were told that although the prosecution might not be able to prove it the defendant may have had a "hidden desire of vengeance or some passion to be gratified." This was not the statement of a rule of law, but an argument against the defendant on the facts.

And the court proceeded at some length with this argument to the jury, claiming that it is often impossible for the prosecution to prove the motive, though one existed.

Now the court stated to the jury that one issue submitted to them was whether the criminal act was committed by the defendant, and it is assumed that the question of motive bears upon this. The defense doubtless argued that, in the absence of direct proof that the crime was committed by the defendant,

the absence of any apparent or imaginable inducement to the crime was a strong circumstance in his favor. The entire charge on this subject had the effect, and no doubt was designed to have the effect, to diminish the force of this argument. Certainly, such was its natural effect, and if, as the charge correctly assumed, it is entirely evidentiary—a circumstance affecting the proof of the ultimate fact, that defendant committed the act—then it must be held to be a charge with respect to matters of fact and a violation of section 19, article VI, of the constitution.

In giving the charge the learned judge stated to the jury that the language of this part of the charge had been approved by the supreme court. The case alluded to is the case of *People v. Durrant,* 116 Cal. 179, where the charge was given. In that case it is stated in the opinion of the court that the appellant did not make serious complaint that any of the instructions were erroneous in point of law, but only that in some instances the propositions which he sought to have laid before the jury were not adequately presented. An examination of the record in the Durrant case shows that the point was not made nor argued that by giving the instructions the court invaded the province of the jury. As here, counsel sought to have the court charge in its favor on this point, and did not complain that it exceeded its power. The point would not have been noticed here but for the necessity of reversing the case for the giving of another instruction where an objection is made, and also to decide as soon as possible that such instructions should not be given.

Section 19, article VI, of the constitution reads as follows: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

What are matters of fact referred to in this section? Undoubtedly, reference is made to the familiar proposition that it is the province of the jury to determine all matters of fact and for the court to declare the law. In this case the learned judge at some length defined the respective functions of the court and jury. The judge said: "It is my duty to state to you the law applicable to the case, and it is your duty, unaided by any suggestion from me, to pass upon all questions of fact. Neither

the judge nor jury may trespass upon the province of the other. Our provinces are entirely distinct and separate. You should receive the law as I state it to be, notwithstanding you should firmly believe I am wrong, and the law is, or should be otherwise. . . . . With the questions of fact, the weight of the evidence, the credit you should give to any witness sworn in the case, the court has nothing to do. These are matters entirely within your province, and which you, as jurors, must determine for yourselves." This is correct and well expressed.

This distinction between the respective functions of the court and jury is an old one, and is plainly recognized in the constitutional provision above quoted. It was and is the practice in the English courts and in the federal courts, and also in many of the states, for the judges to charge the jury as to matters of fact, but it has always been understood that such charge was only in aid of the jury, but that they were not bound by it. The right of the court, however, to declare the law has always been deemed absolute.

A general verdict consists of both law and fact. The jury were bound to find the facts from the evidence which was submitted to them under the supervision of the court. Its competency and relevancy were for the court. But while formerly the court could aid the jury by discussing the evidence—that is, could consider it in its charge as to it—the function of the jury was supreme. The law the court must determine and declare, and the jury was bound absolutely by this determination. The verdict is the application of the law declared by the court to the facts so found.

In the constitutional provision this distinction is recognized. The court must not charge with respect to matters of fact, but may declare the law. If the negative word had been omitted, the use of the different terms would have been significant, and it would have been said that the charge was not as authoritative as the declaration. This adds much force to the inhibition. The court must not even charge—that is, advise—with respect to matters of fact. And this is further emphasized when the constitution proceeds to state affirmatively what the court can do in respect to the evidence. It may state the testimony, *expressio unius est exclusio alterius.*

The prohibition is plainly coextensive with the exclusive province of the jury. If there are rules of law to control and guide, then these may be declared authoritatively. Beyond this the court cannot go without violating this plain inhibition. The court cannot argue to the jury the relevant importance of evidence, except as that is settled by some rule of law. For instance, it is for the court to determine the admissibility of evidence, and evidence may be admitted for a limited purpose, and the jury may be limited in their consideration of it. Certain rules have become rules of law for the consideration of circumstantial evidence, and such rules were properly declared by the court in this case. Except so far as may be indicated by these rules there is no law or legal principle, that I am aware of, which determines the relative probative force of direct and circumstantial evidence.

These maxims or rules are all founded upon the fact that circumstantial differs from direct evidence in this, that circumstantial evidence tends to prove facts not in issue, but from which the fact in issue may be inferred. The special rules lay down the conditions which will warrant the inference. But the law declares nothing as to the relative probative force. Both are admitted, and the jury are required to render their verdict in accordance with their convictions. We all know that testimony may be unreliable, whether addressed directly to the fact in issue or to proof of circumstances, and that in some cases positive evidence has been overcome by circumstantial evidence. The case of an alibi may be of that character. In such cases it is often simply a question as to the veracity of two sets of witnesses. If both kinds are in the same case and they conflict, it is wholly for the jury to determine which is most convincing. In fact, I think circumstantial evidence is more often resorted to by the defense than by the people. Besides, the case of an alibi, circumstances are often shown by the defense tending to make probable the innocence of the accused, or which tend to raise doubts as to truthfulness of witnesses for the prosecution; but I have never known the court to deliver a long address to the jury in the interest of such defense to disabuse the minds of the jury of supposed prejudices against such evidence.

Now, why did the court in this case deliver a long charge to the jury as to the relative value of direct and circumstantial evidence? The reason is plainly stated. No one saw the act of killing, and the proof that defendant is the guilty party is entirely circumstantial. The court enlarged upon the necessity of a resort to such evidence in order to punish crime and to protect the community, and said: "Providence, the laws of nature, and the relation of things are so linked and combined together that a medium of proof is often furnished leading to conclusions as strong as those arising from direct testimony." And again: "Circumstantial evidence has this great advantage, that various circumstances from various sources are not likely to be fabricated." This is a possible case; was it so in this case? And, as instructions should be pertinent to the evidence, was it telling the jury that in this case there were various circumstances against the defendant derived from various sources which were not likely to be fabricated?

That circumstances are not likely to be fabricated may be the opinion of the learned judge, and it may be sound philosophy. It is not, however, a maxim of law, although it has often been said by learned judges, and, in my opinion, it is not generally true. The fact that the circumstances may be exceedingly various and come from unexpected sources, and are generally in themselves trifling affairs that would not impress the minds of observers, makes them easy of fabrication and renders them difficult to disprove. A community excited by a great and mysterious crime is naturally eager to see the perpetrator punished; many of its members are soon found with theories and anxious to show their ability as detectives. The circumstances, when numerous, never constitute a chain in which each is a necessary link, but many may be disbelieved and yet the theory persist. In fact, generally there is no hypothesis or theory save that the defendant is guilty; and the case is an assemblage of suspicious circumstances which may all be true, and yet the defendant be innocent, but which prevail by mere number. The court told the jury that this species of evidence was not entitled to an inferior degree of credit, and to so convince the jury was evidently the purpose of this long charge. Whether it is entitled to such credit or not is a question in

each case to be determined by the jury from the evidence. This charge was plainly an argument for the prosecution.

Instructions have undoubtedly been given, and have to some extent been sanctioned by this court, where the question of the limitation upon the right of the judge to charge the jury as to questions of fact was not raised. The case most often referred to as sanctioning discussions of this kind is *People v. Cronin,* 34 Cal. 191. A very able opinion was rendered by Chief Justice Sanderson, who entirely disregarded this provision of the constitution. Probably it was not called to his attention. He expressed the opinion that in reply to an argument of the defense as to the alleged danger of acting upon circumstantial evidence, "It was competent for the court to caution them against the alleged dangerous tendency of circumstantial evidence claimed by counsel to be demonstrated by these cases." That is, he could answer the argument of counsel for the defense as to the weight and value of evidence, and he gives as authority for the proposition the case of Tom Jones (2 Wheel. C. C. 461), in the circuit court of the United States, where there is no such restriction, showing plainly that the learned justice did not have this restriction in mind. He proceeds expressly to approve of the action of the judge in replying to the persistent attack of counsel for the defense on this class of evidence, directly and expressly declaring that the court may and should charge the jury as to facts, and going so far as to say that the court could properly single out a particular witness and charge the jury as to his credibility. But even Judge Sanderson did not say that as a general rule circumstantial evidence was as satisfactory proof of a fact as positive evidence. He said, on the other hand, that in the nature of things it was not, but that in some cases it was as satisfactory and would produce the same degree of conviction, and might in particular instances be superior.

No one ever disputed this last proposition. A case may be completely made out by circumstantial evidence, and positive and direct testimony may be false. But is it proper under our constitution for the judge, in his charge to the jury, to answer the argument of counsel for the defense on the facts? Such it admittedly was in the Cronin case, which is the father of the

whole errant brood. The constitutional inhibition is too plain to admit of discussion, and such a charge is necessarily a charge with respect to matters of fact, if the domain of fact was correctly defined by the learned judge in his charge. That distinction is older than the courts of the United States, and, so far as I am aware, has never been criticised.

There are a few other cases in which the Cronin case has been blindly followed, all ignoring this constitutional inhibition.

The constitution is too plain to be disregarded on such authority. The cases do not attempt to construe the inhibition or to reconcile it with such instructions, and I think the attempt would necessarily have failed had it been made.

The judgment is reversed and a new trial ordered.