THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* ORTIZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in a Prosecution for Passing Counterfeit Money.

No. 789.—Decided July 8, 1915.

COUNTERFEIT MONEY — KNOWLEDGE AND CRIMINAL INTENT — PASSING SPURIOUS COIN.—The mere fact that a single counterfeit coin was once paid out of the cash-drawer of any reputable business man by a clerk and was afterwards returned and accepted by the proprietor is insufficient to show guilty knowledge and criminal intent upon the part of the latter in a prosecution for passing counterfeit money in the course of a subsequent business transaction.

ID.—After examining the evidence in this case it was held that the evidence as a whole, including both transactions referred to, was entirely insufficient to sustain the verdict of guilty inasmuch as the former transaction had no connection with the latter.

The facts are stated in the opinion.

*Messrs. Rossy & Guillermety* and *José de Diego* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the respondent.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant, appellant, is or was the owner of a small café in Cataño and of an automobile. One day in the earlier part of November, 1913, while sitting in the doorway of his café he called a newsboy, took two papers and told an employee to pay the boy. The employee gave the boy a half-dollar from the cash-drawer and received the change. Ortiz remained seated reading the newspaper. Next day the boy's father told him that the coin was bad and the boy finally, upon the advice of his father and after several futile efforts

to find Ortiz during the absence of the latter from his place
of business, complained to a policeman. Ortiz, upon the mat-
ter being brought to his attention, at once expressed his will-
ingness to restore matters to the original *status quo,* took the
alleged spurious half-dollar and returned to the boy its equiv-
alent in money.

Upon returning from Ciales on December 12, 1913, Ortiz,
just before dawn and upon the outskirts of Cataño, overtook
Juan Rodríguez and Juan Agosto on their way to market
with chickens and eggs. He stopped his machine, bought two
fowls valued at fifty cents each and handed Juan Rodríguez
two coins which the latter accepted in payment without ques-
tion at the moment.

After the automobile had gone, Rodríguez and Agosto
scrutinized the proceeds of the sale more closely with
the aid of a lighted match and, finding both pieces to be false,
took them to the police station in Cataño. The police imme-
diately, and it would seem without difficulty, found the auto-
mobile still in charge of the now slumbering chauffeur, who,
upon being awakened, replied to such questions as were asked.
Whereupon and without delay a search-warrant was pro-
cured and officers armed therewith hastened to the house of
Ortiz, who related the facts as they had occurred, produced
and returned the chickens, said that he did not know the two
coins were bad, that they had been received by him in Ciales
that night, and invited a thorough search of the premises.
Nothing was found.

Defendant was thereafter convicted of counterfeiting un-
der an information charging the facts in the poultry transac-
tion and the trial court denied a motion for a new trial, urged
upon the ground that the verdict was contrary to the law and
the evidence.

The record reveals a somewhat curious and anomalous
situation as the result of conflicting theories of the case upon
the part of the trial judge and the district *fiscal.* On objec-
tion made to the first inquiry by the *fiscal* touching upon the

newspaper transaction the question was withdrawn. On cross-examination, in reply to a question by the defense as to the industrious habits of the defendant, witness, the policeman who figured in the investigation of the newsboy's complaint, stated that he knew defendant as a *peaceable* man. Thereupon the *fiscal* insisted upon developing the newspaper incident in rebuttal of the alleged evidence of good character thus brought out by the defense. The evidence in this regard was then admitted by the court after argument, without suggestion of any other hypothesis upon the part of the judge or of anyone concerned. So far as the record shows, the first intimation given the defendant or the jury of any object or purpose other than that of mere rebuttal was contained in the judge's charge, delivered, of course, after the argument, and in which, for the first time during the trial, attention is called to the circumstances of the newspaper transaction as proof of knowledge and criminal intent. And it is upon the ground of admissibility for the purpose so suggested that the ruling of the court below admitting the so-called evidence in rebuttal is sought to be sustained on appeal.

This court should never be confronted with questions arising from such haphazard trial methods and involving the well-known rule that parties cannot try cases upon one theory below and submit them upon another and wholly distinct hypothesis to the consideration of an appellate tribunal; and, fortunately, under the view we take of the main issue, we are relieved from any serious consideration of such minor matters.

We think the evidence as a whole, including both transactions, is entirely insufficient to sustain the verdict. Defendant had nothing to do with the first transaction at the time. It simply shows that a counterfeit coin was once paid out of his cash-drawer by one of his employees, that the fact was brought to his attention and that the counterfeit half-dollar was promptly redeemed and thus returned into his possession. There was nothing surreptitious or suspicious

about his conduct on either occasion. He answered at all times all questions put to him and there is nothing in the record to show that in any instance he failed to speak the truth. His presumably good character previous to the two transactions involved is unchallenged. To hold that the mere fact of a single counterfeit coin having been once paid out of any reputable business man's cash-drawer by a clerk and afterwards returned and accepted by the proprietor is sufficient to show guilty knowledge and criminal intent upon the part of the latter in a prosecution for passing counterfeit money in the course of a subsequent business transaction, would establish a very dangerous and pernicious precedent. And if we eliminate that feature of this case there is no evidence of such knowledge and intent.

The judgment must be reversed and the defendant discharged.

*Reversed and accused discharged.*

Chief Justice Hernández and Justice Aldrey concurred.

Justices Wolf and del Toro concurred in the reversal of the judgment on other grounds, but were of the opinion that the accused should not be discharged and that there should be a new trial.

DISSENTING OPINION OF MR. JUSTICE WOLF IN WHICH MR. JUSTICE DEL TORO CONCURS.

While Mr. Justice del Toro and myself agree that the case should be reversed, our reasons for such reversal differ from the majority opinion, and we likewise dissent from the action of the court in discharging the prisoner.

In the first place, we have a different conception of the facts that were before the trial court. In the record there is not only a statement of the case but there is also a bill of exceptions. Facts that were submitted to the jury are shown in the bill of exceptions that were not included in the statement. We do not understand why the *fiscal* or the judge

did not insist upon all the facts being included in the statement even if a separate bill of exceptions was prepared. Both the statement of the case and the bill of exceptions must be considered by this court to get at the true facts of the trial.

The statement of facts shows that Fidel Ortiz, the defendant, at five o'clock in the morning of December 12, 1913, passed two counterfeit coins of fifty cents each to the prosecuting witnesses, two vendors of chickens, after having first offered to pay them with a five-dollar bill. When the defendant was confronted with the men, he took back the two fifty-cent pieces and returned the purchases. Enrique Maldonado, twelve·years old, was a witness for the prosecution. On direct examination he said that he went by the shop of the defendant selling newspapers; that the defendant was sitting in front and called to the witness to buy two newspapers and that the defendant told his clerk to give the boy a.nickel, and the clerk said he did not have one and that then the defendant brought a half-dollar from the drawer of the shop and gave it to the boy, who made the change. The next day the boy's father discovered that the coin was false and the witness went looking for the defendant and finally found him; that. the defendant paid back the fifty cents.

On cross-examination the witness said that it was the clerk and not the defendant who gave him the half-dollar. On redirect examination the witness said that the half-dollar was given to him by the clerk on the order of the defendant, and that it was the clerk who gave him back the money. On further cross-examination the witness repeated that it was the clerk who gave him back the money.

The bill of exceptions, besides, shows that a police officer made an investigation of the occurrence related by the newsboy. The police officer testified that some days before the delivery of the two false half-dollars he went to the defendant and asked him how it happened that he gave the bad half-dollar to the newsboy, and that the defendant replied that he

was disposed to take back the half-dollar; that thereupon the defendant was left with the half-dollar and returned the change given him; that these events occurred about twenty-five days before the passing of the two false half-dollars.

All this testimony of the policeman was given under objection. It was important material testimony on the subject of whether the defendant knowingly passed the coin. Perhaps some of it might have been shown to be incompetent on cross-examination, but no cross-examination was made, probably because the defendant relied on his objection and exception. As it was important material testimony and as it was admitted on the false theory and solely on the offer to prove the bad character of the defendant, Mr. Justice del Toro and myself think that the objection and exception were well taken and that the case ought to be reversed. We think it is apparent that the evidence of the policeman was admitted, not to prove the knowledge or intent of the defendant in passing the two false half-dollars for which he was being tried, nor yet for the purpose of showing that the defendant was knowingly in the possession of a coin of similar kind to the ones passed by him on the prosecuting witness. We agree with the appellant that this is not the way to prove the character of a defendant and that therefore the testimony was erroneously admitted.

On the other hand, we are equally convinced that the case should have been sent back for a new trial. The reversal in this case is based apparently on the lack of proof, although comment is made on the error to which I have referred. Ignoring the exceptions, the question presented to this court is whether there was sufficient evidence before the jury to convict, and hence, as the passing of the false coins is conceded by the appellant, there only remains the question of whether there was sufficient evidence in the record to permit a jury to say that the defendant passed the two coins knowing them to be counterfeit.

In prosecutions for passing or uttering counterfeit it is competent to prove, as bearing on the questions of *scienter,* or guilty knowledge, and of guilty intent, that the accused had in his possession at, before, or after the time of the commission of the act charged other counterfeit of the same kind as or similar to that passed or uttered. 11 Cyc., 318. Monographic note to *People* v. *Molyneux,* 62 L. R. A., 257; *Commonwealth* v. *Price,* 10 Gray, 472, 71 A. D., 668; *State* v. *Williams,* 45 A. D., 741; *Reed* v. *State,* 15 Ohio, 222-23; 7 Ruling Case Law, 919; Wharton's Criminal Evidence, vol. 1, section 35.

The majority opinion accepts that the spurious half-dollar remained in the possession of the defendant after the newsboy had received back the fifty cents.

After a man is acknowledged to have received a spurious fifty-cent piece and then is found to be passing two other counterfeit fifty-cent pieces, the jury have a right to infer that he had knowledge of their spurious character. The majority opinion says: "To hold that the mere fact that a single counterfeit coin having once been paid out of any reputable business man's cash-drawer by a clerk and afterwards returned and accepted by the proprietor is sufficient to show guilty knowledge and criminal intent on the part of the latter in a prosecution for passing counterfeit money in the course of a subsequent business transaction, would establish a very dangerous and pernicious precedent." But even taking the facts as the court conceives them, there was something more in the record, namely, that the defendant remained in the possession of the false half-dollar and that later he passed two counterfeit half-dollars. These coins ultimately passed were exactly of the same nature as the coin first passed. If one of them was not the same coin as passed originally, to give the defendant the benefit of the doubt, it was a remarkable circumstance that within twenty-five days the defendant should be in possession of three false half-dollars without knowing that any one of them was false. Considering only

so much of the evidence and barring the error, the court would have the right to submit the question of the guilty knowledge to the jury. However, there was something more in the record and that was the statement of the policeman that we have transcribed, which tended to show that the clerk gave the false half-dollar to the boy upon the order of the defendant and that when the defendant was asked why he had done so he replied that he was disposed to receive the coin back.

From any aspect of the case the question of *scienter*, or guilty knowledge, was a matter for the jury. The action of this court, it seems to the dissenting judges, invaded the province of the jury. This court has the power, perhaps, to examine into the facts and to see that a verdict or judgment is not the result of passion, prejudice, or partiality, following the uniform jurisprudence of this court. Such a power, however, is rarely exercised. Indeed, in this case the opinion does not purport to say that the verdict and judgment were the result of any undue element, but it says that the evidence is insufficient. I do not think that the Legislature, in giving this court power to examine into the facts for fundamental errors, intended that the court should ordinarily substitute itself for the jury.

In the case of *The People* v. *Cofresí*, decided by this court on July 9, 1915, this court intimated that a jury in Porto Rico could generally be relied upon to convict where a man is guilty, and, similarly, it may be relied upon to acquit when the defendant is innocent. The attitude of appellate courts toward overcoming the verdict of the jury in cases more or less similar may be gathered from general jurisprudence and especially from the cases of *The People* v. *Vereneseneckockockhoff*, 129 Cal., 497; *State* v. *Martin*, 107 Pac., 1000-01; *The People* v. *Sutton*, 17 P. R. R., 327, 343; *State* v. *Brown*, 113 Pac., 783; *People* v. *Muhly*, 114 Pac., 1017. *Ad quaestionem facti non respondent judices, ad quaestionem legis non respondent juratores.*

The action of the court also necessarily assumes that no other proof could have been obtained by the Government or that the errors complained of could not have been cleared up at a new trial.

I am authorized to state that Mr. Justice del Toro concurs in this dissenting opinion.