PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CARLOS COLÓN, Defendant and Appellant.

No. 4248.    Argued February 4, 1931.—Decided March 27, 1931.

*E. Martínez Avilés* for appellant.    *R. A. Gómez,* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

The appellant was tried in the District Court of Arecibo by a duly impaneled jury, under an information reading as follows:

"The prosecuting attorney files this information against Ramón Marrero, also known as Moncho, Carlos Colón, and Olimpio Pérez, charging them with murder in the first degree committed as follows:

"The said defendants, Ramón Marrero, also known as Moncho, Carlos Colón, and Olimpio Pérez, on the night of September 4, 1929, at a place known as 'Junco' in the ward of Hato Abajo, Arecibo, P. R., within the judicial district of the same name, then and there, unlawfully, wilfully, maliciously and feloniously, with malice aforethought and deliberate intent to kill, attacked, assaulted, and tortured Antonio Rivera, (a human being), inflicting several wounds in his

skull and body with a hoe, one of which wounds (that inflicted in the right occipital region of the skull, which was fractured) caused the unlawful death of the said Antonio Rivera, which occurred then and there shortly thereafter.

"This is contrary to the law for such case made and provided and against the peace and dignity of the People of Puerto Rico."

The jury found the defendant herein guilty of murder in the second degree and the court sentenced him to twenty years in the penitentiary at hard labor. The said defendant has appealed from that judgment.

Two are the errors assigned by the appellant: one based on the denial of his motion for a nonsuit; the other on the rendering of a judgment against him upon a verdict claimed to be contrary to law and against the evidence.

At the trial, Dr. Curbelo testified to the wounds observed by him in the body of Antonio Rivera and to the fact that they had caused the death of the latter; and as regards the identity of the person upon whose body he had performed the autopsy, he stated that before performing such autopsy he asked the caretaker (celador) of the cemetery which was the corpse of Antonio Rivera, and that the caretaker pointed it out to him.

Policemen Guillermo Fuentes and Manuel Berríos testified in regard to a hoe which was found, smeared with blood and dirt, near the place where the body of the deceased lay. They also testified as to that place; the ravines existing there; how they had found a cow tied to the root of a tree; and that there was a long machete at the said place.

Marcos Maldonado described before the jury how the crime had been committed and his own participation therein acting in concert with Moncho Marrero, Carlos Colón, and Olimpio Pérez. He related their going to the house of Justo Marrero in order to tell him that his hens were being stolen, which warning was given by Carlos Colón, and that after this they ran away and met Moncho Marrero, who sent Carlos to call Antonio Rivera while Marrero was bringing, as he did, the

cow outside, fastening the same to the root of a tree; that Colón called Rivera and told him that his cow was being stolen; that Rivera came outside carrying a machete and meanwhile Marrero had climbed the tree above the cow and, when Rivera arrived and started to release the cow, Marrero from above struck him with the hoe, which implement was shown to the witness and identified by him as the same that had been used by Marrero; that Colón also struck Rivera with a machete he was carrying and that they took from Rivera the money he had with him and thereafter divided the same among themselves, in the house of Carlos Colón.

Nicomedes Rivera testified to a conversation which Pedro Jiménez and Carlos Colón had had in his presence on September 7, in the course of which Colón stated how the perpetrators of the crime had arrived at the place, how they had brought the cow outside: "Such a detailed account—the witness said—that Pedro told him: 'You did it, then, since you know so much.'" And Colón remarked: "I did not, but I would have killed that scoundrel (*sinvergüenza*) long ago."

Witness Pedro Jiménez corroborated his conversation with Carlos Colón and stated that Colón told him that he supposed the events had occurred thus: "The deceased was sleeping and he was called from outside the house, and they told him: 'Toño, they are stealing your cow,' and he arose and took a machete and went in search of the cow to a ravine (*rejolla*), and then they killed him there"; that someone attacked him from above while he was releasing the cow. The witness stated to Colón that the latter knew more than enough and that he had done it, and Colón replied that he had not done it but that the deceased was an individual past killing.

Luis García Colón, who also heard the conversation between Jiménez and the accused, testified similarly.

The district attorney of Arecibo testified to the manner in which Marcos Maldonado had related, before him and in the presence of Carlos Colón, how the facts had occurred, and

that when he informed Carlos Colón that Maldonado had made a full statement the former said: "I lost that opportunity."

The prosecution offered the machete and the hoe in evidence, and they were admitted.

The defense moved to strike out the testimony of Maldonado and that the jury be instructed to bring a verdict of not guilty. This motion was denied.

The present appeal is chiefly based on the contention that the testimony of the accomplice Maldonado was not corroborated and, therefore, can not be used to convict the accused.

In our decision in *People* v. *Marrero*, 41 P.R.R. 938, we pointed out the rule which we have followed in this matter of corroboration of the testimony of an accomplice, which rule is applicable in the instant case.

The jury are the triers of facts and the determination of matters of that character is left to them; they decide as to the credibility of the testimony given; it is their province to determine whether the testimony has been so corroborated as to produce that reasonable certainty which is necessary to either acquit or convict. From the dissenting opinion in *People* v. *Ortiz*, 22 P.R.R. 630, 637, we quote the following:

"In the case of The People v. Cofresí, decided by this court on July 9, 1915, this court intimated that a jury in Porto Rico could generally be relied upon to convict where a man is guilty, and similarly, it may be relied upon to acquit when the defendant is innocent. The attitude of appellate courts toward overcoming the verdict of the jury in cases more or less similar may be gathered from general jurisprudence and especially from the cases of The People v. Vereneseneckockockhoff, 129 Cal. 497; State v. Martin, 107 Pac. 1000–01; The People v. Sutton, 17 P.R.R. 327, 343; State v. Brown, 113 Pac. 783; People v. Muhly, 114 Pac. 1017. *Ad quaestionem facti non respondent judices, ad quaestionem legis non respondent juratores.*"

The Latin maxim we have just transcribed embodies a doctrine which is in harmony with the true nature of the jury as an institution.

We find that none of the errors assigned by the appellant has been committed.

The judgment appealed from must be affirmed.