[Crim. No. 122. Fourth Appellate District.—July 30, 1931.]

THE PEOPLE, Respondent, v. T. C. CLAPPER, Appellant.

Burns & Watkins for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged with two separate crimes of forgery, as alleged in two counts of an information filed by the district attorney of Fresno County. The first count charges that on or about October 18, 1930, with the intent to defraud, the defendant falsely uttered, forged and passed a check, a copy of which is set forth, purporting to be a check on the Fresno Branch of the Bank of America, payable to cash, for $7 and signed ''W. B. More'', knowing the same to be altered and forged. In the second count it is charged that with intent to defraud, he uttered, forged and passed a check dated October 24, 1930, a copy of which is set forth, drawn on the Fresno Branch of the Bank of Italy, payable to cash, for $6, and signed ''H. H. Haropp'', knowing the same to be altered and forged. He is further charged with three prior convictions. By the verdict of a jury he was found guilty on both counts of the information and was also found to have suffered three prior convictions of a felony, as set forth in the information. This appeal is from the judgment which followed, and from an order denying a motion for a new trial.

The first point raised is that the evidence is not sufficient to support the judgment. Appellant maintains that the only evidence upon the subject of his guilt is the following: W. B. Moore, long a resident of Fresno, testified that the signature on the check was not his; that he had never authorized any person to sign his name thereto; that he knew no other person of his name in the county of Fresno; and that he had never known the defendant. R. R. Haropp, an old resident of Fresno, testified that he knew no person in Fresno named H. H. Haropp and that the only other person by that name in that vicinity was his father, A. R. Haropp. There was evidence that neither of the banks named in the information had a checking account in the name of W. B. More or H. H. Haropp at

any time within several years. There was the evidence of a handwriting expert that both checks were written by the defendant, and that the only attempt to disguise the handwriting was one word in the second check, which the expert stated might have been caused by a change in position of the writer. The appellant himself testified as follows:

"I first saw that check, filed as Plaintiff's Exhibit 1 in the room 26 of the Salvation Army Hotel, on the night of the 17th of October, 1930. I wrote the check and signed it. I did it by the instructions of witness Dant and another gentleman. I did not know who that other gentleman was. He said his name was W. B. More. I never saw him before and have not since seen him. I do not know where he is now. It looked suspicious to me on account of the transaction which came up over some liquor, that is what the check was given for. The witness Dant gave him the liquor for the check. The liquor was in two jugs. I have been in jail and never looked for this man More.

"The other check, Exhibit No. 2, I wrote and signed it. There were two men together. The witness Dant brought them into my room. The witness Osburn and Cal Nance and Coon Dog Benson were there. They were all pretty full. This man gave Dant the check for the booze—two jugs. They took the booze and went out. Dant and Osburn said it would be all right. I found out there was something wrong about the checks when I .was arrested. I wrote the name of H. H. Haropp to that second check. He said that was his name. I had no way of knowing whether he had an account at the bank—I never saw him before. I did not know there was anything crooked about the matter. If I had known his name was not H. H. Haropp, I would not have written it."

Appellant argues that it thus conclusively appears that he signed the names of W. B. More and H. H. Haropp to the respective checks at the request and in the presence of persons who claim to be those parties respectively, and that this does not constitute forgery in the absence of proof that he knew that the names these persons gave were not their true names, nor unless it appears that he knew that such

persons did not have sufficient funds in the respective banks to meet the checks.

We find, however, considerable other evidence in the record. Carl Christensen testified that he ran a cigar store in Fresno and cashed the first check for the appellant on October 18, 1930; that he and Dant came to the store together, and appellant asked him to cash the check for him; that Dant told him appellant roomed at his home, and he told them that if Dant would indorse the check he would cash it; and that Dant indorsed the check and he gave the appellant the money, which he put in his pocket. He also testified that later, he cashed the other check in about the same manner; that Dant accompanied the appellant to his store; that appellant had the check; and that, at his request, Dant indorsed the check, which he cashed. He further testified that both checks were returned to him, and subsequently, another party took up the $7 check, paying him that amount, and Dant took up the $6 check, paying him that amount. Dant testified that the first time he ever saw the first check was in Christensen's store when the appellant was trying to cash it; that he told Christensen appellant was rooming at his house, and Christensen asked him to indorse the check; that he did so; and that Christensen gave the money to appellant, and he put it in his pocket. He further testified that a few days later, the appellant asked him again to "o.k" a check for him, telling him the signer was a business man there and that the check was good; that he indorsed the other check here involved, and Christensen gave the money to appellant; that later, when Christensen told him the checks were no good, he himself took up one and another man took up the other. He testified that he did not see the defendant write either of the checks; that he knew nothing of a man named W. B. Moore being present on the occasion when the appellant testified the first check was signed; that appellant brought the second check there already written; and that the appellant had tried to get him to cash the second check before taking it to Christensen, telling him the check was in payment for whisky which he had sold to the party signing it. He further testified that the defendant left Fresno on October 27, 1930; that the defendant had been staying at his place and had promised to make the two

checks good; that on October 27th the defendant told him that he would leave his outfit there while he went to Visalia to collect some money, and that he would come back and make the checks good; that ten minutes later he saw the defendant come out with his grip and run around the corner; and that he immediately phoned to the district attorney. There is evidence that two men came from the district attorney's office and with Dant, hunted for the defendant. Also, that the defendant went to Los Angeles on that day, and later was brought back by an officer from Montebello, California. A police officer testified that on November 5, 1930, the defendant told him he did not remember writing the checks. Another officer testified that while he was returning him from Montebello, the defendant stated that he had issued these checks while intoxicated.

If it is conceded, as argued by appellant, that the mere writing of a check for another at his request is not forgery, such a situation does not conclusively appear from the evidence. The jury may well have refused to believe the story told by appellant. To believe that Dant turned over liquor to a stranger and accepted, in payment therefor, a check written and signed for the stranger by this helpful individual who had never seen the stranger before, the check not only being written in the presence of Dant but actually at his suggestion, calls for a high degree of credulity. Perhaps the jury recognized the "mysterious stranger" who is omnipresent in liquor cases. In addition, there is ample evidence that the check was not written under the circumstances testified to by appellant. The evidence is sufficient to sustain the verdict, no more than a conflict appearing, at best.

Error is next claimed in the refusal of the trial court to give certain instructions offered. It is first claimed that the court erred in refusing an instruction, which, after setting forth what was claimed by the prosecution in reference to the first count of the information, and what was claimed by the defendant in reference to that count, concluded as follows: "And the jury are instructed that if the said check for $7 was drawn by defendant, at the request of a person then and there representing himself to be W. B. Moore, and at the request of that person wrote his name, or what that person claimed

to be his name, W. B. Moore, to that check, believing him to be named W. B. Moore, and not knowing that W. B. Moore did not have a checking account or credit at that bank, then, and in that event, the making and the signing of the said check would be of the said person so claiming to be W. B. Moore, and would not be the act of defendant, and in such case defendant would not be guilty of forgery."

And also another instruction which, after setting forth what was claimed by the prosecution in reference to the second count of the information, and what was claimed by the defendant in reference to the same count, concluded as follows: "If it be true that the instrument described as the first act of forgery by defendant was written by him at the request of and in the presence or by the direction of a person then representing himself to be named W. B. Moore, and if it be further true that the said person was then a stranger to defendant and the said instrument was written by defendant at the request of said stranger and in his presence, and the name he represented himself to have, W. B. Moore, was written thereto in his presence, and at his request and direction, then the drawing, uttering, signing and delivery of that check would be the act of the person so requesting the same to be written, and defendant in such case would not be guilty of forgery."

It is apparent that the concluding part of this second instruction mistakenly referred to Moore instead of Haropp. We think no error is shown. Aside from the other objections, we should hesitate to approve the proposition that a person is justified in writing and signing a check for a stranger, even at his request, without some excuse or reason therefor, and without knowledge of facts that could justify such procedure. In addition, the pertinent parts of the requested instructions are covered in an instruction given by the court, to the effect that if they should find that the defendant had authority to sign the check, they should find him not guilty.

■ Appellant complains of the following instructions, which were given by the court:

"In a crime of this nature, certain elements are necessary to be established, and certain questions must be decided by you as jurors. In this case before you can convict the defendant:

"First, were the checks which are set out in the information executed, created or made by defendant?

"Second, was the defendant authorized by W. B. Moore or H. H. Haropp, to so execute, create or make the checks?

"Third, did defendant know that he had no authority to sign the name of W. B. Moore or H. H. Haropp?

"Fourth, were the checks, as executed, created or made, passed by the defendant knowing the same to have been executed, created or made without authority?

"Fifth, did the defendant have the intent to defraud some person, either at the time he executed, created or made the checks, or at the time he passed the checks, if you find that he either endorsed or passed them, or both?

"If you find that the prosecution has established these elements by proof which convinces you beyond a reasonable doubt, and to a moral certainty, then I instruct you that it is your duty to convict the defendant."

It is claimed that these instructions exclude the idea that any other persons of similar names had authorized the making and signing of the checks. The appellant admitted writing and signing the checks, and the only question raised by his defense was his authority so to do. That issue was submitted to the jury under appropriate instructions. The instruction here complained of must be read with all of the others, and taken together, they were sufficient to cover the question as to whether the writing and signing of the checks had been authorized by any persons named Moore and Haropp.

It is next claimed that the court erred in giving the following instruction: "The Court further instructs the jury that while they must be convinced of the guilt of the defendant beyond a reasonable doubt, from the evidence in the case in order to warrant a conviction, still the proof need not be the direct evidence of persons who saw the offense committed. The acts constituting the crime may be proved by circumstances. In other words, there are two classes of evidence recognized and admitted in courts of justice upon either of which jurors may lawfully find an accused guilty of crime. One is direct and positive testimony of any eye witness to the commission of the crime, and the other is proof of a chain of circumstances pointing sufficiently strongly to the commission of the

crime by the defendant and which is known as circumstantial evidence. Such evidence may consist of statements by defendant, plans laid for the commission of the crime, in short, any acts, declarations or circumstances admitted in evidence tending to connect the defendant with the commission of the crime. It is essential that in the chain of evidence relied upon each fact be established to a moral certainty and beyond a reasonable doubt.

"You are further instructed that circumstantial evidence is legal and competent in criminal cases, and if it is of such a character as to exclude every reasonable hypothesis other than that the defendant is guilty, it is entitled to the same weight as direct testimony."

It is insisted that this was an erroneous instruction upon the weight of the evidence. Appellant relies upon the case of *People* v. *Vereneseneckockockhoff*, 129 Cal. 497. [58 Pac. 156, 62 Pac. 111]. In that case, an instruction that circumstantial evidence is not likely to be fabricated, taken in connection with the other circumstances shown, was held to be improper. In a number of other cases it has been held that it is not reversible error to instruct the jury that there is nothing in the nature of circumstantial evidence making it less reliable than other classes of testimony, where the instruction, considered with the rest of the charge, merely means that a verdict may be based upon circumstantial evidence, as well as on direct evidence, where the same is sufficiently convincing. (*People* v. *Wilson*, 23 Cal. App. 513 [138 Pac. 971]; *People* v. *Watts*, 198 Cal. 776 [246 Pac. 884, 892].) In the last case cited, in referring to an expression somewhat similar to that used here, the court said: "The court's statement that the facts referred to in the instructions might be established 'as satisfactory and as conclusively by circumstantial as by direct evidence', when read in connection with the whole charge, amounted to no more than a statement that circumstantial evidence is legal and competent, and that if the jurors found it to be sufficient to prove defendant's guilt beyond a reasonable doubt they might accept it and act upon it just as if it were direct evidence. So construed, the instructions state the law correctly. (*People* v. *Tom Woo*, 181 Cal. 331 [184 Pac. 389].)"

That language might well have been used in reference to the instruction here complained of. It may also be pointed out that the judgment here does not rest entirely upon circircumstantial evidence for its support.

■ The last point raised is, that there is a fatal variance between the allegations of the information and the proofs. This contention is based upon the claim that the judgment rests entirely upon the testimony of Moore and Haropp, that they had never authorized the defendant to sign their names to the respective checks. While testimony to that effect was introduced, that was only a part of the People's case. There is ample other evidence to the effect that the defendant had no authority from any other persons with similar names, to support the verdict.

The judgment and order are affirmed.

Marks, J., and Griffin, J., *pro tem.*, concurred.