## GEORGE ET AL. v. EMERY ET AL .
### (No. 604.)

SALES—EVIDENCE—VARYING TERMS OF WRITTEN CONTRACT BY PAROL —PLEDGE—COLLATERAL SECURITY—RIGHT OF PLEDGEE OF NOTE TO ENFORCE PAYMENT—INSTRUCTIONS—DIRECTING VERDICT — NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

1. An oral agreement which would vary the terms of a written contract of the parties is incompetent if made before the completion of the agreement as evidenced by the writing, but if made afterwards, for a good and valid consideration, it is competent.

2. Testimony was properly excluded which was offered to show that after a written bill of sale of certain cattle was signed, but before it was completed by delivery to the buyer, and the execution and delivery by the latter of a note for part of the purchase price, an oral agreement was made waiving a tallying of the cattle which was provided for in the written contract.

3. The bona fide holder of a negotiable note as collateral security may enforce payment thereof at least to the amount for which it is so held.

4. Where defendants who were sued upon a promissory note given for part of the purchase price of certain cattle de-

fended upon the ground of failure of consideration because of the non-delivery of the number of cattle called for by the written contract of sale, and sought damages against the seller by way of counter claim, it appeared that a bank, with whom the plaintiffs had deposited the note as collateral security for their own note of a less amount, had paid the latter note with funds of the defendants on deposit in the bank, and credited the same upon the note in suit. *Held,* that it was immaterial as affecting the liability of plaintiffs for the alleged failure of consideration, whether said credit was made with or without authority of the defendants, for the plaintiffs were in no better position than they would have been had the full amount of the purchase price of the cattle been paid at the time of the sale, and they had failed to deliver all the cattle agreed to be delivered by the terms of the written agreement.

5. In a suit upon a note given for the unpaid purchase price of certain cattle, a verdict was directed in favor of the defendants for a stated amount upon their counterclaim for damages for the failure of the plaintiffs to deliver the number of cattle called for by the written contract of sale. *Held,* (1) That the error, if any, in so directing a verdict, by reason of a conflict in the evidence as to the number of cattle received by the defendants, was not prejudicial, since the court credited plaintiffs with the highest number of cattle shown by the evidence to have been received by defendants. (2) That the failure to submit the amount of recovery to the jury was not prejudicial error, that being simply a matter of computation, and it was not claimed that the court's computation was incorrect.

6. On the trial of an action involving the liability of the plaintiffs for failure to deliver the number of cattle called for by their contract of sale, a deposition was read in evidence of a witness, whose duty it was to inspect all shipments of cattle from Wyoming to a stated point, who testified to a certain shipment by the defendants of cattle bearing the brand covered by said contract. *Held,* that the alleged fact discovered near the end of the trial that said witness would testify that the defendants, during a stated year, had shipped a designated number of said cattle, did not entitle the plaintiffs to a new trial on the ground of newly dis-. covered evidence, for in the exercise of due diligence it was their duty to have interrogated the witness as to all shipments of such cattle by the defendants, and having failed to do so, they were not in a position to urge a new

trial in order to procure his testimony as to other shipments; and for the further reason that it did not appear that the cattle so claimed to have been shipped were excluded from the number admitted by defendants to have been received, and for which the plaintiffs were given credit by the judgment.

[Decided March 3, 1910.]                    (107 Pac. 1.)

ERROR to the District Court, Big Horn County; HON. CARROLL H. PARMELEE, Judge.

The facts are stated in the opinion.

*Ridgely & West,* for plaintiffs in error.

The defendants having assumed the burden of proof, it was incumbent upon them to prove one of two principal facts in order to maintain their allegation of failure of consideration: (1) That on January 7, 1907, there were not 450 head of cattle bearing the brands sold in existence, or, (2) that the title did not pass to the defendants at that date, and that their possession of the same was merely as bailees for the plaintiffs. Under ordinary circumstances loss of personal property must be borne by the legal owners. (Main v. Jarrett, 119 Am. St. 144; Frech v. Lewis, 120 Am. St. 864; Phosphate Co. v. Gill, 1 L. R. A. 761.) If there were not 450 head of cattle on the range on November 1, 1907, that being the date when the tally was to have been completed, but that number were on the range on January 7, 1907, then there must have been a loss in the meantime. The defendants wholly failed to show the number of cattle on the range in January. The plaintiffs proved that during November and December, 1906, cattle to the number of 461 bearing the brands sold had been actually counted on the range. The right of defendants to recover, therefore, depends upon whether the title passed at the date they took possession and paid for the property.

Oral evidence is not admissible to modify or vary the terms of a written contract, but that rule does not apply to agreements made between the parties subsequent to the execution of the written agreement. It is competent for

parties to a written contract at any time before a breach thereof, by a subsequent verbal agreement upon sufficient consideration, either to waive, dissolve or annul the previous written agreement, and such subsequent agreement may be proven by parol. (Windlinger v. Smith, 40 Am. Rep. 727; Stoop v. Smith, 97 Am. Dec. 76; Canal Co. v. Ray, 101 U. S. 527; Clark on Contracts, 618-619; Lawson on Cont., 395; Taylor v. R. R. Co., (N. C.) 6 Am. St. 512; Delaney v. Linden, (Neb.) 34 N. W. 630; Abbott's Proving Facts, (2nd Ed.) 3; Cook v. Cain, (Wash.) 77 Pac. 682; Harris v. Murphy, (N. C.) 56 Am. St. 656; Grace v. Lynch, (Wis.) 49 N. W. 751; White v. Soto, (Cal.) 23 Pac. 213; Emerson v. Slayter, 22 Howard, 218; Swain v. Seaman, 9 Wall. 254; McCauley v. Keller, (Pa.) 17 Am. St. 759; Platt v. United States, 22 Wall. 497; Calipe v. Mining Co., (Colo.) 48 Pac. 668; Cummings v. Arnold, (Mass.) 37 Am. Dec. 154; Spaun v. Bartzell, (Fla.) 46 Am. Dec. 346; Perrine v. Cheeseman, (N. J.) 19 Am. Dec. 388; Viele v. Ins. Co., (Ia.) 96 Am. Dec. 83; Hale v. Sheehan, 41 Neb. 102, 59 N. W. 554; Rogers v. Atkinson, 1 Ga. 12; Brewster v. Countryman, 12 Wend. 446; Bryant v. Hunt, 70 Am. Dec. 262.) The consideration in the subsequent agreement was the immediate delivery of the cattle into the possession of the defendants, so that they could ship beef cattle out of the herd and winter and care for them as they deemed proper. This constituted a good and valuable consideration. The act of the defendants in immediately executing and delivering the note in suit after the subsequent agreement had been entered into seems a circumstance that the jury might well have considered in determining whether or not the subsequent agreement really existed. It was competent for the plaintiffs to submit the testimony tending to establish a subsequent agreement, leaving it for the jury to find whether there was a subsequent agreement, and what effect, if any, it had upon the contract in question. It was therefore prejudicial error to strike out the testimony offered by the plaintiffs upon this point.

The question of delivery and acceptance, the passing of title, and the waiver of conditions in sales and contracts are all questions of fact, depending upon the intention of the parties, and therefore it is the province of the jury to determine what the real intent of the parties was in entering into the contract. The jury may determine the matter as much from the acts of the parties as from what they may have said. (6 Curr. Law, 633; Reich v. Sweinhart, (Pa.) 51 Am. Dec. 540, 11 Pa. St. 233; Elliot v. Howeson, 40 So. 1018; Tiedeman on Sales, Sec. 67.) Where the performance of the obligation is prevented by one of the parties to a contract the party prevented from discharging his part will be protected as though he had performed it. (Marshall v. Creig, 4 Am. Dec. 647; Packing Co. v. Clawson, (Colo.) 95 Pac. 546; LaFollett v. Mitch, (Ore.) 69 Pac. 916; 8 Curr. Law, 13, 39; Bell v. Hatfield, (Ky.) 89 S. W. 544; White v. DeSoto, (Cal.) 23 Pac. 210.) The defendants admitted that in their shipment of cattle in January, 1907, a number of the cattle involved in this transaction were included, but no accurate tally was kept of them, and by their act, therefore, they rendered it impossible to make a correct tally of the cattle sold. Defendants also admit that they made several shipments prior to November, 1907, in which there were included cattle covered by the contract. As the cattle were to be tallied on Nov. 1, 1907, unless defendants waived that clause by their subsequent agreement, the plaintiffs were entitled to have the cattle kept where they could be counted until a date fixed in the contract for the counting. The acts of the defendants in thus shipping the cattle is not consistent with their theory that they were simply holding them as bailees for the plaintiffs. It was prejudicial error for the court to direct a verdict in favor of the defendants, for the evidence was conflicting upon the facts, and the amount of recovery was clearly a matter for the jury to determine. The plaintiffs' motion for a new trial on the ground of newly discovered evidence should have been granted.

*Lonabaugh & Wenzell,* for the defendants in error.

The evidence offered by the plaintiffs to show that the cattle were not to be tallied was incompetent, for it was thereby attempted to vary the written contract. (Grieve v. Grieve, 89 Pac. 569.) The oral agreement waiving the counting of the cattle appears to have been made, if at all, before the completion of the written contract, and it could not therefore be pleaded or proven. Such oral agreement would not be competent unless made after such contract and upon a valid consideration. The proposition that plaintiffs were entitled to a new trial upon the ground of newly discovered evidence is untenable. If the evidence was really in existence it was the duty of the plaintiffs to have shown it by the affidavits of the witnesses themselves, and not by the affidavit of one of the plaintiffs. (Braithwaite v. Aiken, 49 N. W. 419; Wheeler v. Russell, 67 N. W. 43.) The proposition that the defendants had accepted the cattle without requiring them to be counted seems to have been an afterthought on the part of the plaintiffs, induced by their efforts to avoid the contract. No duty devolved upon the defendants to hold the cattle actually received by them and tallied. That one of the plaintiffs by actual count found about 461 head in November, 1906, is not evidence as to the number in existence at the date of the contract, for many things could happen between November and January, even if the question as to the number of cattle the plaintiffs had in January, 1907, is at all material. There was no change of possession of the cattle. The defendants for some time prior to the date of the contract had been running the cattle for the plaintiffs; the cattle were then on the public range and there could be no delivery or actual change of possession until they could be rounded up on the range and counted. There were indeed a few head in the pasture, and these were immediately counted and delivered. The giving of the note by the defendants was the final act closing the agreement, and that act could not be considered by the jury as showing a subsequent oral agreement.

BEARD, JUSTICE.

The plaintiffs brought this action to recover the sum of $1,371.47 with interest and attorneys' fees from the defendants; alleging the same to be a balance due upon a promissory note executed by defendants to plaintiffs for the sum of $4,053.12, dated January 7, 1907, and due nine months after date; that about April 1, 1907, plaintiffs delivered said note to the Bank of Commerce, Sheridan, Wyoming, as collateral security for a note of $3,000, dated April 1, 1907, and due October 7, 1907; that the $3,000 note had been paid and the collateral note returned by the bank to plaintiffs with the indorsement of $3,044.16 thereon, which had been paid. The defendants answered admitting the execution of the note, but denied that the sum indorsed thereon, or any sum, had ever been voluntarily paid by them thereon, and alleged that the amount of the credit on said note was deducted by the bank from moneys of defendants on deposit in said bank and applied in payment of said $3,000 note of plaintiffs and credited upon the note in suit without authority of defendants. That the consideration for said note had wholly failed, and that there never was any consideration therefor; that at the time of the execution of the note the plaintiffs represented to defendants that they owned 450 head of cattle and 5 head of horses which they desired to sell, the cattle at $25 per head, and the horses at $50 per head, amounting in the aggregate to $11,500. That defendants agreed to purchase said cattle and horses, and that all of said cattle should be tallied on or before Nov. 1, 1907, and that defendants should only pay for the number of cattle actually rounded up, gathered, tallied and delivered. That at the time of the transaction, the defendants paid in cash and by assuming certain indebtedness of plaintiffs the said sum of $11,500, except the sum of $4,053.12, represented by the note in suit. That as evidence of said agreement the plaintiffs executed and delivered to defendants a contract in writing (a copy of which is set out in the answer and is in form a

bill of sale) which recites, that for the consideration of $11,488, the plaintiffs do grant, bargain, sell and convey to defendants 450 head of cattle and 5 head of saddle horses (describing them) and contains the following statement: "The above cattle to be tallied before November 1st, 1907." Defendants allege that they received only 279 head of said cattle.

By way of counterclaim against plaintiffs defendants allege substantially the same facts as in the first count of their answer, and that by the payments made at the date of the contract the plaintiffs were overpaid for the cattle actually received by defendants in the sum of $567.17, and by the credit on the note in suit the further sum of $3,044.16, for which sums, with interest, they prayed judgment against plaintiffs, and that plaintiffs take nothing by their petition.

The plaintiffs replied, admitting that the note in suit was given in payment for cattle; that the bill of sale was executed and delivered; that $3,044.16 was paid on the note, but deny that the payment was involuntary. They then allege that on or about January 7, 1907, the defendants expressly waived all counting or tallying of the cattle in question and agreed to accept and did accept said cattle at the number of 450 head upon the public range. That about February 1, 1907, defendants shipped a large number of said cattle to South Omaha, Nebraska; that no count of the same was kept, and that by so doing the defendants rendered a correct tally or count of said cattle impossible.

The cause was tried to a jury, and at the close of the evidence, on motion of defendants, the court instructed the jury to return a verdict in favor of defendants and against plaintiffs in the sum of $3,324.23, which was accordingly done. Judgment was entered upon the verdict, a motion, by plaintiffs, for a new trial was denied, and plaintiffs bring error.

On the trial the plaintiffs offered and sought to prove an oral agreement waiving the terms of the bill of sale as to the tallying of the cattle. This testimony and the offers

so to prove, were objected to by defendants on the ground that it was incompetent, being an attempt to vary the terms of a written contract by an oral contemporaneous agreement. The testimony and offers were excluded by the court, and that ruling is the chief alleged error complained of. There is no controversy between counsel as to the law on this point. If the oral agreement sought to be proven by plaintiffs was made before the completion of the agreement which was evidenced by the writing, then it was incompetent because it would vary the terms of the written contract; but if made afterwards, for a good and valid consideration, it was competent. To our minds the testimony of the plaintiffs themselves clearly shows that the contract was not completed at the time of the alleged oral agreement. It appears that in the negotiations leading up to the contract, Eaton acted for the plaintiffs and Emery acted for defendants. That they met at a bank in Basin, Wyoming, in the forenoon of January 7, when the bill of sale was drawn, and probably signed at that time by Eaton for George & Eaton. Eaton testified that after the bill of sale was executed he and Emery went to see George "to see if it was satisfactory to Mr. George the transaction I made with Mr. Emery." George testified as to this meeting, "Well, they came down to see if I would agree to put the clause in the bill of sale to protect Emery at the bank, was his excuse for it, to see if I would agree to it, to have those cattle tallied." It was at this time and at this meeting that plaintiffs claim the oral agreement to waive the tallying of the cattle by defendants was entered into. We think it is clear from plaintiffs' own testimony that this was before the completion of the contract. Counsel for plaintiffs say in their brief, "All parties admit, however, that immediately after this conversation they went back to the bank and the defendants gave the note in question." This statement of counsel for plaintiffs removes any doubt that might exist as to whether or not the contract, as evidenced by the writing, was completed before or after the alleged oral agreement. The

questions asked and the offered testimony, by plaintiffs, went no farther than to show that the bill of sale had been signed or executed before the alleged oral agreement was made, but do not purport to show that it was before the contract was completed by the delivery of the bill of sale and by the execution and delivery of the note in suit. The offered testimony was at variance with the terms of the writing, and was rightly excluded. Whether the credit on the note was made by direction of defendants, or as claimed by them, we do not regard as material. The note was negotiable and the bank was a *bona fide* holder of the same as collateral security and could have enforced payment, at least to the amount for which it so held it. Plaintiffs are in no better position than they would have been had the full amount of the purchase price of the cattle been paid at the time of the sale and they had failed to deliver all the cattle agreed to be delivered by the terms of the written agreement.

It is contended that, as there was a conflict in the evidence as to the number of cattle received by the defendants, the court erred in directing a verdict in their favor. But if error be conceded in that respect, it appears that the court gave plaintiffs credit for the highest number of cattle shown by the evidence to have been received by defendants. Such being the case plaintiffs have no cause to complain on that ground. If error, it was without prejudice to plaintiffs. It is also contended that the court should have submitted the question of the amount of recovery to the jury. That was simply a matter of computation, and it is not claimed that there was any error in such computation, and therefore not prejudicial to plaintiffs.

One ground for a new trial contained in plaintiffs' motion therefor, is newly discovered evidence. The new evidence claimed to have been discovered, during the latter part of the trial, is, that Claude L. Talbot, Brand Inspector for Wyoming State Stock Growers' Association, at Omaha, will testify that during the year 1907 the defendants shipped

to Omaha from 132 to 162 head of cattle bearing one of the brands of the cattle for which the note in suit was given. The deposition of this party was taken and introduced upon the trial, from which it appears he testified to a certain shipment of cattle by defendants bearing the brand in question. He also stated in his deposition that it was his duty as such inspector to inspect all cattle shipped from the State of Wyoming. We think due diligence would have required the plaintiffs to have interrogated this witness as to all shipments of such cattle by defendants, and having failed to do so, they are not in a position to complain or to urge a new trial in order to procure his testimony as to other shipments. Nor does it appear that the cattle so claimed to have been shipped were not included in the number admitted by defendants to have been received, and for which the court gave plaintiffs credit.

We find no prejudicial error in the record and the judgment of the District Court is therefore affirmed.

*Affirmed.*

POTTER, C. J., and SCOTT, J., concur.