EL PUEBLO, DEMANDANTE Y APELADO, *v.* ORTIZ, ACUSADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Sección 2ª., en causa por falsificación.

No. 789.—Resuelto en julio 8, 1915.

FALSIFICACIÓN—CONOCIMIENTO E INTENCIÓN CRIMINAL—CIRCULACIÓN DE MONE-
DAS FALSAS.—El mero hecho de haber un dependiente pagado una vez una
moneda falsa del cajón del establecimiento de un comerciante bien acredi-
tado, y que después fué devuelta y aceptada por el dueño, es insuficiente
para probar el conocimiento e intención criminal por parte de este último
en un proceso seguido por poner en circulación una moneda falsa en el curso
de una negociación subsiguiente.

ID.—EXAMEN DE LAS PRUEBAS—INSUFICIENCIA DE LA PRUEBA.—Examinada la
prueba en este caso, resolvióse que, en conjunto, incluyendo las dos transac-
ciones a que se refiere, es enteramente insuficiente para sostener el veredicto
de culpabilidad, puesto que el acusado nada tenía que ver con la primera
negociación al ocurrir ésta.

Abogados del apelante: *Sres. Rossy & Guillermety* y *José
de Diego.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del
tribunal.

El acusado-apelante es o era dueño de un cafetín en Ca-
taño y de un automóvil. En uno de los primeros días del
mes de noviembre de 1913, estando sentado en la puerta
de entrada a su cafetín llamó a un muchacho que vendía perió-
dicos, tomó dos y le dijo al dependiente que le pagara al
muchacho. El dependiente sacó medio peso del cajón del
establecimiento y se lo dió al muchacho de quien recibió la
vuelta. Ortiz se quedó sentado leyendo el periódico. Al
día siguiente el padre del muchacho le dijo a éste que la
moneda era falsa y por último el muchacho, aconsejado por
su padre y después de haber hecho varias gestiones por hallar
a Ortiz que estaba ausente de su establecimiento, se quejó
a la policía. Al ser informado Ortiz sobre el particular mani-
festó inmediatamente su deseo de que volvieran a reponerse
las cosas al estado en que se encontraban al principio, cogió

el supuesto medio peso falso y devolvió al muchacho su equivalente en dinero.

Al regresar Ortiz de Ciales en diciembre 12, 1913, precisamente antes de amanecer y en los confines de Cataño detuvo a Juan Rodríguez y a Juan Agosto que se dirigían a la plaza con pollos y huevos. Paró su automóvil, compró dos aves en cincuenta centavos cada una entregando a Juan Rodríguez dos monedas que éste recibió como pago, sin que en el momento se suscitara ninguna discusión.

Después de haberse retirado el automóvil, Rodríguez y Agosto examinaron con más cuidado el dinero que habían obtenido de la venta para lo cual encendieron un fósforo y al notar que las dos monedas eran falsas las llevaron al cuartel de la policía de Cataño. Inmediatamente la policía, sin dificultad alguna al parecer, encontró el automóvil todavía a cargo de Ortiz que entonces se hallaba dormido, quien al ser despertado contestó a todas aquellas preguntas que se le hicieron. Después de lo cual se solicitó sin demora alguna una orden de allanamiento y una vez obtenida ésta por los agentes de la policía se alistaron a ir a la casa de Ortiz quien refirió los hechos tal como habían ocurrido; enseñó y devolvió los pollos, dijo que no sabía que los dos medios pesos eran falsos, que los había recibido en Ciales la misma noche, y pidió que se hiciera una busca completa del local. Nada se encontró.

Con posterioridad a esto fué declarado culpable el acusado de un delito de falsificación a virtud de la acusación en la cual se alegaban los hechos relativos a la negociación de los pollos habiendo negado la corte sentenciadora la moción de nuevo juicio que fué presentada, fundada en, que el veredicto era contrario a la ley y a las pruebas.

Los autos revelan una situación algo curiosa y anómala con motivo de las diferentes teorías que con respecto al caso sustentaban el juez sentenciador y el fiscal de distrito. Habiéndose formulado objeción a la primer pregunta que se hizo por el Fiscal relativa a la negociación del periódico fué reti-

rada la pregunta.   En el examen de repreguntas y en contestación a una pregunta hecha por la defensa acerca de si conocía al acusado como hombre trabajador, manifestó el testigo, que fué el policía que intervino en la investigación hecha con motivo de la queja del vendedor de periódicos, que conocía al acusado como hombre *tranquilo*.   Entonces el Fiscal insistió en hacer relucir el incidente del periódico como prueba de refutación de la supuesta prueba del buen carácter que de tal manera fué presentada por la defensa.   La prueba en cuanto a este particular fué admitida por la corte después de discutida, sin que ninguna otra hipótesis hubiera sido sugerida por el juez o alguno de los demás interesados.   De todo lo que consta de los autos, la primer indicación hecha al acusado o al jurado de que el único fin o propósito no era sino la mera refutación, aparecía en las instrucciones dadas por el juez, desde luego después de los informes, en las cuales por primera vez durante el juicio se llama la atención a las circunstancias de la negociación del periódico como prueba del conocimiento y de la intención criminal.   Y es por el fundamento de admisibilidad con el objeto indicado que la resolución de la corte inferior admitiendo la llamada prueba de refutación se trata de sostener en la apelación.

Este tribunal nunca debe verse en el caso de tener que considerar cuestiones que surgen de tales métodos casuales de juicio en los cuales está envuelta la bien conocida regla de que las partes no pueden juzgar casos basados en una teoría en la corte inferior y someterlos mediante otra hipótesis completamente distinta a la consideración del tribunal de apelación; y afortunadamente según el criterio que formamos de la cuestión principal no es necesario que consideremos formalmente dichas cuestiones secundarias.

Creemos que la prueba en conjunto incluyendo ambas transacciones, es enteramente insuficiente para sostener el veredicto.   El acusado nada tenía que ver con la primera negociación al ocurrir ésta.   De ella sólo aparece el hecho de que en cierta ocasión se pagó con una moneda falsa que fué

sacada del cajón de su establecimiento por uno de sus depen-dientes; que puesto el hecho en conocimiento de Ortiz fué recogido prontamente el medio peso falso pasando así nueva-mente a su poder. No hubo nada oculto o sospechoso con res-pecto a su conducta, en una u otra ocasión. El contestó siem-pre a todas las preguntas que se le hicieron y no existe nada en los autos que demuestre que alguna vez dejara de decir la verdad. Su buen carácter que es de presumirse con ante-rioridad a las dos transacciones en cuestión, no ha sido ta-chado. Resolver que por el mero hecho de haber un depen-diente pagado una vez una moneda falsa del cajón del esta-blecimiento de cualquier comerciante bien acreditado y que después fué devuelta y aceptada por el dueño, es suficiente para probar el conocimiento del delito e intención criminal por parte de éste último en un proceso seguido por poner en circulación una moneda falsificada en el curso de una nego-ciación subsiguiente, sería establecer un precedente muy per-judicial y pernicioso. Y si en este caso prescindimos de ese particular, no hay prueba alguna de dicho conocimiento e intención.

Debe revocarse la sentencia y absolverse al acusado.

*Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-ciado Aldrey.

Los Jueces Asociados Sres. Wolf y del Toro firmaron estando conformes, por otros fundamentos, con la revocación de la sentencia, pero no con la absolución del acusado, opi-nando que debe celebrarse un nuevo juicio.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF EN LA CUAL CON-CURRE EL JUEZ ASOCIADO SR. DEL TORO.

Aunque el Juez Asociado Sr. del Toro y el que suscribe fuimos de parecer de que debía revocarse la sentencia, las razones que tenemos para dicha revocación son distintas de las expresadas por la mayoría del tribunal y asimismo disen-timos de la resolución de la corte absolviendo al acusado.

En primer lugar tenemos un concepto distinto de los hechos que fueron sometidos a la consideración de la corte sentenciadora. No solamente existe en los autos una exposición del caso, sino también un pliego de excepciones. En el pliego de excepciones aparecen hechos que fueron sometidos al jurado que no se incluyeron en la exposición. No vemos por qué el Fiscal o el juez no insistieron en que todos los hechos fueran incluídos en la exposición aun cuando se hubiera preparado un pliego de excepciones por separado. Tanto la exposición del caso como el pliego de excepciones deben ser considerados por este tribunal para llegar a conocer los verdaderos hechos del juicio.

La relación de hechos muestra que Fidel Ortiz, el acusado, a las cinco de la mañana del día 12 de diciembre de 1913, pasó dos monedas falsas de cincuenta centavos cada una a los denunciantes que eran dos vendedores de gallinas, después de haberles ofrecido pagar primeramente con un billete de cinco dólares. Al ser confrontado el acusado con los hombres, recogió las dos monedas de cincuenta centavos y devolvió las compras. Enrique Maldonado, de doce años de edad, era testigo de la acusación. Dijo en el interrogatorio directo que estuvo por la tienda del acusado vendiendo periódicos; que el acusado estaba sentado en la puerta y llamó al testigo para comprarle dos periódicos diciéndole el acusado a su dependiente que le diera un vellón al muchacho, manifestando el dependiente que no tenía, y que entonces el acusado trajo medio peso del cajón del establecimiento y se lo dió al muchacho el cual devolvió la vuelta. Al otro día el padre del muchacho descubrió que la moneda era falsa y el testigo se fué a buscar al acusado a quien por fin encontró; que el acusado le devolvió los cincuenta centavos.

Repreguntado el testigo manifestó que fué el dependiente y no el acusado el que le dió el medio dólar. A nuevas preguntas del Fiscal el testigo dijo que el medio peso se lo entregó el dependiente por orden del acusado, y que fué el dependiente quien le devolvió el dinero. Repreguntado de nuevo

repitió el testigo que fué el dependiente quien le devolvió el dinero.

Aparece además del pliego de excepciones, que un oficial de la policía hizo una investigación acerca del suceso relatado por el muchacho vendedor de periódicos. El oficial de la policía declaró que algunos días antes de la entrega de los dos medios pesos falsos, fué donde el acusado y le preguntó cómo era que él le había dado el medio peso falso al muchacho de los periódicos, contestando el acusado que estaba dispuesto a recoger el medio peso; que el acusado entonces se quedó con el medio peso y devolvió el cambio que se le dió; que estos hechos ocurrieron unos veinte y cinco días con anterioridad a cuando se pasaron los dos medios pesos falsos.

Se formuló objeción a toda la declaración del policía. Era una declaración importante y esencial respecto al hecho de si el acusado pasó a sabiendas la moneda. Quizás si en el examen de repreguntas podría haberse demostrado que parte de dicha declaración era impertinente, pero no se hicieron repreguntas probablemente porque el acusado confiaba en la objeción y excepción que había formulado. Como era una declaración importante y esencial cuya admisión se basó en una teoría errónea y únicamente con motivo del ofrecimiento que se hizo de probar el mal carácter del acusado, el Juez Sr. del Toro y el que suscribe creemos que la objeción y excepción fueron formuladas debidamente y que la sentencia debe ser revocada. Entendemos que es una cuestión clara que la declaración del policía fué admitida no para probar el conocimiento o intención del acusado al pasar los dos medios pesos falsos por lo cual se le juzgaba, ni siquiera con el fin de acreditar que el acusado a sabiendas tenía en su poder una moneda de igual clase a las que pasó a los denunciantes. Convenimos con el apelante en que éste es el medio de probar el carácter de un acusado y por tanto que la prueba fué erróneamente admitida.

Por otra parte estamos asimismo convencidos de que el caso debió haberse devuelto a la corte inferior para la celebración de un nuevo juicio.   La revocación en este caso se fundó al parecer en la falta de prueba si bien se comenta el error al cual hemos hecho referencia.   Dejando a un lado las excepciones, la cuestión que ha sido sometida a este tribunal es si hubo prueba suficiente ante el jurado para declarar culpable al acusado, y por tanto como el hecho de pasar las monedas falsas ha sido admitido por el apelante, queda únicamente la cuestión de si hubo prueba suficiente en los autos que permitiera al jurado decir que el acusado pasó las dos monedas sabiendo que eran falsificadas.

En causas por pasar o poner en circulación monedas falsas es pertinente el probar por la relación que tienen con las cuestiones de *scienter* o conocimiento del delito y de la intención criminal, que el acusado en la fecha en que realizó el acto que se le imputa o antes o después de la misma, tenía en su poder otras monedas falsas de la clase o semejantes a las pasadas o puestas en circulación.   11 Cyc., 318.   Nota monográfica al caso de *People* v. *Molyneux,* 62 L. R. A., 257; *Commonwealth* v. *Price,* 10 Gray, 472, 71 A. D., 668; *State* v. *Williams,* 45 A. D., 741; *Reed* v. *State,* 15 Ohio, 222–23; 7 *Ruling Case Law,* 919.   *Wharton's Criminal Evidence,* tomo 1, párrafo 35.

En la opinión de la mayoría se acepta que la moneda falsa de cincuenta centavos quedó en posesión del acusado después que se le habían devuelto al muchacho de los periódicos los cincuenta centavos.

Después que se admite el hecho de haber recibido un hombre una moneda falsa de cincuenta centavos y se le encuentra luego pasando otras dos monedas falsas de cincuenta centavos, el jurado tiene derecho a deducir que él tenía conocimiento de que eran falsas.   Dice la opinión de la mayoría: ''Resolver que por el mero hecho de haber un dependiente pagado una vez una moneda falsa del cajón del establecimiento de cualquier comerciante bien acreditado y que des-

pués fué devuelta y aceptada por el dueño es suficiente para probar el conocimiento del delito e intención criminal por parte de este último en un proceso seguido por poner en circulación una moneda falsificada en el curso de una negociación subsiguiente, sería establecer un precedente muy perjudicial y pernicioso.'' Pero aun admitiendo los hechos como los concibe la corte, algo más aparecía de los autos, a saber, que el acusado quedó en posesión del medio peso falso y que más tarde pasó él dos medios pesos falsificados. Estas monedas que fueron pasadas últimamente eran precisamente de la misma clase que la primer moneda que se pasó. Si una de ellas no era la misma moneda que la pasada originalmente para dar al acusado el beneficio de la duda, era una circunstancia muy digna de ser tenida en cuenta el hecho de que dentro de veinte y cinco días estuviera el acusado en posesión de tres medios pesos falsos, sin saber que ninguno de ellos era falso. Considerando solamente esa prueba y salvo el error, la corte tendría el derecho de someter la cuestión del conocimiento del delito al jurado. Sin embargo, algo más aparecía de los autos o sea la declaración del policía que hemos transcrito, la cual tendía a acreditar que el dependiente dió el medio peso falso al muchacho por orden del acusado y que al preguntarse al acusado por qué había hecho eso, dijo que estaba dispuesto a volver a recibir la moneda.

Desde cualquier aspecto que se considere el caso, la cuestión de *scienter*, o conocimiento del delito, era una cuestión para el jurado. La acción de este tribunal, según el criterio de los jueces disidentes, penetró en las atribuciones del jurado. Este tribunal quizás tiene facultad para investigar los hechos y convencerse de que el veredicto o sentencia no es el resultado de pasión, prejuicio o parcialidad, de conformidad con la jurisprudencia uniforme de esta corte. Sin embargo, raras veces se ejercita dicha facultad. En verdad que en este caso en la opinión no se trata de decir que el veredicto y sentencia fueron consecuencia de algún elemento indebido pero se dice que la prueba es insuficiente. No creo que

la legislatura al dar facultad a esta corte para examinar los hechos con el fin de conocer los errores fundamentales tuvo la intención de que la corte debía ordinariamente substituirse al jurado.

En el caso de *El Pueblo* v. *Cofresí,* resuelto por este tribunal en julio 9, 1915, indicó el tribunal que por lo general puede confiarse en que el jurado en Puerto Rico condena a un hombre que es culpable de un delito, y de igual modo puede tenerse confianza de que absuelve al acusado si es inocente. La actitud de las cortes de apelación en tratar de dejar sin efecto el veredicto del jurado en casos más o menos parecidos puede observarse en la jurisprudencia general y particularmente en los casos de *The People* v. *Verenesenecockockhoff,* 129 Cal. 497; *State* v. *Marren,* 107 Pac., 1,000-01; *The People* v. *Sutton,* 17 D. P. R., 343; *State* v. *Brown,* 113 Pac.. 783; *People* v. *Muhly,* 114 Pac., 1017. *Ad quaestionem facti non respondent judices, ad quaestionem legis non respondent juratores.*

La resolución de la corte también supone necesariamente que no podía haber obtenido el Gobierno ninguna otra prueba, o que los errores alegados no pudieron haberse aclarado en un nuevo juicio.

Estoy autorizado para expresar que el Juez Asociado Sr. del Toro está de acuerdo con esta opinión disidente.