EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARLOS COLÓN, acusado y apelante.

No. 4248.—*Sometido:* Febrero 4, 1931. *Resuelto:* Marzo 27, 1931.

*E. Martínez Avilés*, abogado del apelante; *R. A. Gómez*, abogado de *El Pueblo*, apelado.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

El apelante fué juzgado por un jurado legalmente constituído, en la corte de distrito de Arecibo, y bajo la acusación cuyo texto es como sigue:

"El Fiscal formula acusación contra Ramón Marrero, c|p Moncho, Carlos Colón y Olimpio Pérez, por el delito de asesinato en primer grado (*felony*) cometido de la manera siguiente:

"Los referidos acusados, Ramón Marrero, c|p Moncho, Carlos. Colón y Olimpio Pérez, en la noche del día 4 de septiembre de 1929, y en el sitio conocido por 'Junco', del Bo. Hato Abajo, de Arecibo, P. R., que forma parte del distrito judicial del mismo nombre, allí y entonces, ilegal, voluntaria, maliciosa y criminalmente, con malicia premeditada y deliberado propósito de dar muerte, demostrando tener un corazón pervertido y maligno, acometieron, agredieron y torturaron a Antonio Rivera (ser humano) produciéndole varias heridas en el cráneo y cuerpo con una azada, siendo una de dichas heridas (la que le ocasionaron en la región occipital derecha del cráneo, con fractura de éste) la causa de la muerte ilegal de dicho Antonio Rivera, que ocurrió allí y entonces, pocos momentos después.

"Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico."

El Jurado declaró a este acusado culpable de asesinato en segundo grado; y la corte condenó a la pena de veinte años de presidio con trabajos forzados. Contra la sentencia en que se le impone tal pena, apela el acusado Colón.

Los errores señalados por el apelante son dos: uno por la denegación de orden de *nonsuit,* y otro por haber dictado sentencia contra el acusado siendo el veredicto contrario a derecho y a las pruebas.

En el juicio declaró el Doctor Guillermo Curbelo, acerca de las heridas observadas por él en el cadáver de Antonio Rivera, y de que ellas fueron la causa de la muerte de Rivera; y en cuanto a su conocimiento de la persona cuya autopsia practicó, dijo que cuando fué a practicar la autopsia preguntó al celador del cementerio cuál era el cadáver de Antonio Rivera, y el celador se lo señaló.

Los testigos Guillermo Fuentes y Manuel Barrios, ambos de la Policía Insular, declararon acerca de una azada que se halló en el sitio en que estaba el cadáver, y cuya azada presentaba manchas de sangre y de barro; y asimismo acerca del sitio, y de los barrancos que en el mismo hay, y de cómo encontraron una vaca amarrada a una raíz; y de que en el sitio había un machete largo.

Marcos Maldonado dijo ante el jurado cómo se cometió el crimen, y su participación en el mismo, de acuerdo con Moncho Marrero, Carlos Colón, y Olimpio Pérez. Relató su ida a casa de Justo Marrero, para decirle que le iban a robar las gallinas, aviso que dió Carlos Colón, y que después echaron a correr, y encontraron a Moncho Marrero, quien mandó a Carlos a que llamara a Antonio Rivera, mientras Marrero sacaba la vaca, como lo hizo, amarrándola de la raíz de un palo, y Colón llamó a Rivera, diciéndole que le robaban la vaca; salió Rivera, que llevaba un machete, y Marrero había subido a la parte arriba de donde estaba la vaca, y cuando llegó Rivera y la fué a soltar, Marrero desde arriba le dió con la azada, cuyo instrumento le es presentado y lo reconoce como el mismo que usó Marrero; que Colón también le dió a Rivera con un machete que llevaba, y que cogieron el dinero que llevaba Rivera, y luego se lo repartieron en casa de Carlos Colón.

Nicomedes Rivera declaró acerca de una conversación que ante él tuvieron, el 7 de septiembre Pedro Jiménez y Carlos Colón, y de cómo éste relató cómo había llegado la gente, por dónde bajaron, cómo bajaron la vaca, "un relato tan minucioso—dice el testigo—que Pedro le dijo: entonces fuiste tú, cuando sabes tantas cosas," y Colón le contestó: "Yo no fuí, pero a ese sinvergüenza lo hubiera matado yo antes".

El testigo Pedro Jiménez confirma la conversación con Carlos Colón, y que éste le dijo que suponía que el hecho había ocurrido así: "El muerto estaba durmiendo, y lo lla-

maron por detrás del seto, y le dijeron 'Toño, te roban la vaca,' y se levantó, y cogió el machete y se fué detrás de la vaca a la rejolla, y entonces allí lo mataron," y que uno le había acometido por arriba mientras soltaba la vaca. El testigo le dijo que él sabía más de la cuenta y que él había sido, y Colón dijo que él no había sido, pero que ese individuo estaba pasado de que lo mataran.

En términos parecidos declaró Luis García Colón, que oyó también la conversación entre Jiménez y el acusado.

El fiscal del distrito de Arecibo declaró acerca de la forma en que Marcos Maldonado relató, ante él y en presencia de Carlos Colón y Moncho Marrero, cómo ocurrieron los hechos, y que Carlos Colón al decirle el testigo que Maldonado lo declaró todo, dijo: "Yo perdí esa oportunidad".

Se ofreció por El Pueblo, como prueba, el machete y la azada, y quedaron admitidos.

La defensa pidió que se eliminara la declaración de Maldonado, y que se ordenara al jurado que trajera un veredicto absolutorio. La moción fué denegada.

Esta apelación se funda principalmente en que la declaración del cómplice Maldonado no fué corroborada, y no puede ser usada para condenar al acusado.

En la decisión en el caso criminal No. 4202, *El Pueblo* v. *Marrero,* rendida por este tribunal en 18 del corriente mes de marzo (41 D.P.R. 951), hemos expuesto la doctrina seguida por este tribunal en esta materia de corroboración del testimonio del cómplice, que es la misma que aplicamos a este caso.

El jurado es el tribunal de hecho y a su decisión se someten las cuestiones de esa clase; él juzga de la certeza de los testimonios; a él toca decidir si se ha corroborado un testimonio en forma tal que pueda producir la razonable certeza necesaria para absolver o condenar. De la opinión disidente en el caso *El Pueblo* v. *Ortiz,* 22 D.P.R. 680, copiamos:

"En el caso de El Pueblo v. Cofresí, resuelto por este tribunal en julio 9, 1915, indicó el tribunal que por lo general puede confiarse en que el jurado en Puerto Rico condena a un hombre que es culpable de un delito, y de igual modo puede tenerse confianza de que absuelve al acusado si es inocente. La actitud de las cortes de apelación en tratar de dejar sin efecto el veredicto del jurado en casos más o menos parecidos puede observarse en la jurisprudencia general y particularmente en los casos de The People v. Vereneseneckockockoff, 129 Cal. 497; State v. Marren, 107 Pac. 1000-01; The People v. Sutton, 17 D.P.R. 343; State v. Brown, 113 Pac. 783; People v. Muhly, 114 Pac. 1017. *Ad quaestionem facti non respondent judices, ad quaestionem legis non respondent juratores."*

La cita en latín que se acaba de copiar expone una doctrina de acuerdo con la verdadera naturaleza de la institución del jurado.

No encontramos que se haya cometido ninguno de los errores que se señalan por el apelante.

*Debe confirmarse la sentencia apelada.*