EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISRAEL ROMÁN CALERO, acusado y apelante. EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISRAEL ROMÁN CALERO, acusado y apelante. EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISRAEL ROMÁN CALERO, acusado y apelante.

Nos. 4300, 4304 y 4305.—*Sometidos:* Mayo 7, 1931. *Resueltos:* Julio 14, 1931.

*Buenaventura Esteves,* abogado del apelante; *R. A. Gómez,* abo-
gado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se vieron conjuntamente tres apelaciones. En la núm. 4304 el apelante fué acusado de haber atentado contra la vida de Agustín Jiménez, con una manopla; en la núm. 4305, de ha-ber atentado contra la vida de Adolfo Méndez, con un arma punzante y cortante; y en la núm. 4300, de haber portado armas prohibidas, a saber, la manopla y un puñal. En los recursos números 4304 y 4305, los casos fueron juzgados ante jurado, y en cada uno de ellos el acusado fué declarado cul-pable de acometimiento y agresión grave.

En estos tres casos se suscita la cuestión de que la sentencia es contraria a la prueba; ésta tendió a demostrar que el apelante en realidad de verdad acometió a Agustín Ji-ménez con una manopla, y a Adolfo Méndez con un cuchillo. Generalmente, cuando hay conflicto en la evidencia, como aquí, el veredicto del jurado o del juez no será revisado a menos que se nos convenza de que el veredicto o la sentencia son contrarios a la prueba. *El Pueblo* v. *Colón,* 42 D.P.R. 53, 56, citando de la opinión disidente en *El Pueblo* v. *Ortiz,* 22 D.P.R. 680. Nos referiremos, sin embargo, a ciertos extremos del caso No. 4304.

El apelante sostuvo que la prueba tendió a demostrar que el arma no era una manopla. Él mismo declaró que hizo uso de unas tijeras. Un médico prestó declaración tendente a de-mostrar que, dada la naturaleza de la lesión, la herida proba-blemente no pudo haber sido producida por una manopla. Además, el acusado insiste en que las manoplas no se hacen

de níquel y que, por consiguiente, los testigos estaban equivocados al decir que en una noche oscura ellos pudieron ver el reflejo de un metal blanco. El jurado tenía derecho a pesar la declaración del doctor conjuntamente con otros extremos, y, no obstante eso, tenía derecho a creer a los testigos. cuando dijeron que vieron la manopla. La opinión del médico no excluía la posibilidad de que la herida pudiera haber sido producida por tal manopla. No hemos hallado en el récord manifestación alguna de nadie de que las manoplas no se puedan hacer de níquel, en vez de cobre o bronce, todo lo cual tiende a demostrar que un jurado no está necesariamente obligado por la opinión de un perito. No queda excluída la posibilidad de que los testigos estuvieran errados en su descripción del arma, pero que sin embargo la vieran. Todas estas materias eran para el jurado.

Además, el acusado declaró que utilizó unas tijeras e infligió las heridas. Las heridas eran más bien serias, o capaces de serlo. Bajo la ley (Leyes de 1904, pág. 42), ''Todo acometimiento y agresión será considerado con circunstancias agravantes. . . cuando se cometiere con intención premeditada para el fin calculado de inferir graves heridas corporales.'' Como se imputó al acusado un atentado a la vida y fué convicto de acometimiento y agresión, el uso de unas tijeras podría ser justamente lo que redujo el delito a uno de menor denominación. La prueba de que se trataba de unas tijeras en vez de una manopla, sería una variación inofensiva. Considerando la naturaleza del veredicto, las armas usadas eran suficientemente similares. 30 C. J. págs. 135 *et seq.*

Otros errores se señalaron en el núm. 4304, el caso de acometimiento y agresión contra Agustín Jiménez. El testigo Dámaso Alfaro se refirió no sólo a la agresión de Agustín Jiménez, sino también a la de Adolfo Méndez. El acusado solicitó la eliminación por el fundamento de que la agresión de Méndez no era relevante a la de Jiménez. La corte

propiamente resolvió de que todo ello era parte de la *res gestae*. La agresión de Méndez tuvo lugar inmediatamente después de la de Jiménez.

■ Guillermina Méndez había declarado; su declaración abarca tres o cuatro páginas del récord en maquinilla, y ella había contestado preguntas específicas héchasle por el fiscal del distrito. Al terminar su declaración, el acusado dijo: "¿Cómo fué eso? Vuelva otra vez a contarlo." El fiscal se opuso a la forma de la pregunta, evidentemente por ser demasiado general. La corte resolvió que la testigo podía ser examinada específicamente hasta cualquier límite en conexión con el interrogatorio directo, y que hasta podía ser examinada respecto a extremos deprimentes para ella, y que el acusado podría impugnar su credibilidad en una u otra forma, pero que no era un procedimiento adecuado el de meramente pedirle a la testigo que repitiera su declaración. La corte tiene discreción en estas materias, y pudo fácilmente ver que era innecesario hacer que la testigo tratara de reproducir en esta forma toda su declaración que le había sido extraída por un número de preguntas específicas. No hallamos ni error ni perjuicio.

Un testigo dió lo que podría llamarse evidencia corroborante de lo que algunas personas habían dicho respecto a cómo llegaron al sitio en que se cometió el delito. La defensa solicitó la eliminación, y el que la corte no accediera no era ni erróneo ni perjudicial.

En el caso núm. 4305, la corte también se negó a eliminar algún testimonio que formaba parte de la *res gestae*. El señalamiento no merece discusión especial.

En el número 4300, el señalamiento es que la sentencia era contraria a la prueba, la que hemos discutido al principio.

*Deben confirmarse las sentencias apeladas.*